**Flor de Maria Navarro SANCHEZ, Appellant,**

v.

**Jose Fernandez Galan PALAU, Appellee.**

No. 01–08–00648–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 2010.

Monte L. Swearengen, Gray & Becker, P.C., Austin, TX, for Appellant.

Andres Perez–Chaumont, Law office of Andres Chaumont, Armando Lopez, Armando Lopez, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Flor de Maria Navarro Sanchez (Navarro), appeals the trial court's domestication of a 2008 Mexican divorce judgment, filed by appellee, Jose Fernandez Galan Palau (Galan). In two issues, Navarro contends that: (1) the trial court erred in failing to vacate the Mexican divorce judgment because it was domesticated after the parties were divorced in Travis County, Texas; and (2) the Mexican divorce judgment was not subject to domestication pursuant to the Uniform Foreign Country Money–Judgment Recognition Act.[1]

We vacate and dismiss.

## Background

Navarro and Galan were married in San Luis Potosi, Mexico, on October 23, 1950. When they married, both parties agreed that their owned and acquired property would remain separate. On December 11, 2003, Navarro filed for divorce in Mexico, claiming that Galan was in an adulterous relationship and was no longer supporting Navarro. Navarro requested thirty percent of Galan's assets in her petition for divorce. On February 28, 2006, Navarro's request for divorce was denied by the Mexican court, due to unproven facts.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.001–36.008 (Vernon 2008).

After being denied a divorce in Mexico, Navarro relocated to Austin, Texas, and filed for divorce in the 353rd Judicial District Court of Travis County, Texas, on May 4, 2006.[2] Her grounds for divorce were insupportability due to discord or conflict of personalities, adultery on the part of Galan, and cruel treatment by Galan toward her. Navarro again requested a division of the property acquired by Galan during their marriage. Galan was personally served in Travis County, Texas, with the Original Petition for Divorce on May 4, 2006. Galan made a special appearance to the Travis County court on May 15, 2006, and the court dismissed the divorce petition for lack of personal jurisdiction over Galan on June 27, 2006. Navarro then filed a motion for new trial with the Travis County court, asserting that Galan was subject to personal jurisdiction because he had been served with process while present in Texas. The motion for new trial was granted on August 30, 2006.

Parallel to the proceedings in Travis County, on May 23, 2006, Galan filed for divorce in San Luis Potosi, Mexico, on the ground that he and Navarro had been separated for more than two years. The summons for divorce was delivered to Navarro on June 22, 2006, a few days before the Travis County court dismissed her divorce petition for lack of jurisdiction over Galan. On May 1, 2007, Galan filed an Affidavit of Filing Foreign Judgment Pursuant to the Uniform Enforcement of Foreign Judgments Act in the 126th Judicial District Court of Travis County, Texas, with regard to the 2006 denial of the divorce Navarro had sought in Mexico. On July 13, 2007, the Travis County court held that the Mexican judgment was entitled to full force and effect, but it was not res judicata as to the Travis County suit because the Travis County suit was based on grounds not available under Mexican law or facts.

The Travis County divorce case was set for trial on October 22, 2007. On that same date, Galan filed a notice of removal to federal court, stating that the Texas court did not have personal jurisdiction over him and that the 2006 Mexican judgment barred the Texas proceeding. The federal court found that Galan acted in bad faith and that he removed the case simply to delay the Travis County court proceedings and to help the Mexican court proceedings finish first, as he expected a result in his favor from that court. The case was remanded back to state court.

The divorce case in Travis County, Texas, was heard on November 5 and 6, 2007. Both Navarro and Galan appeared in person and through their attorneys. The court granted Navarro a divorce and divided the marital property between them.[3] Regarding the date of the judgment, the decree states, "This divorce [was] judicially PRONOUNCED AND RENDERED ... on November 6, 2007, and further noted on the Court's docket sheet on the same date but [was] SIGNED on the 16 [*sic*] day of November, 2007."[4] Navarro and her attorney signed the order as approved as to form only—Galan and his attorney did not. In November 2007, UBS Financial Services, Inc. ("UBS") filed an interpleader

---

2. While Navarro established residency in Travis County, Texas, she retained her Mexican citizenship.

3. Navarro was awarded 62.5% of the community estate and Galan was awarded 37.5% of the community estate.

4. While the judgment purports to be final on this date, there is dispute between the parties as to when it actually became final, due to interpleaders that were filed. Both parties agreed on the record in Travis County court that they intended to finalize the judgment on March 31, 2008.

concerning a couple of accounts over which Navarro and Galan were both claiming a right.[5] At a hearing on March 31, 2008, Navarro and Galan both represented to the court that they wanted to settle the UBS matter "to allow the divorce decree to become final" so they could obtain a ruling from the appellate court. The UBS matter was resolved at the hearing to the satisfaction of all parties and the trial court's order was approved by both Navarro's and Galan's attorneys on April 1, 2008.

On April 28, 2008, Bank of America intervened in the Travis County divorce case.[6] On May 13, 2008, the Travis County court granted Bank of America's interpleader.[7] Galan requested that the Travis County court issue findings of fact and conclusions of law. In its First Amended Findings of Fact and Conclusions of Law, dated May 7, 2008, the Travis County court found that the 2006 Mexican judgment denying Navarro's request for divorce did not award any property or characterize any of the property as separate or community.[8] The Travis County court concluded that the Mexican divorce case was not res judicata as to any issue in the Travis County divorce case.[9] Additionally, the Travis County court found that it had jurisdiction over both parties and the subject matter of the suit.[10]

Around the same time that Bank of America intervened in Travis County, the Mexican court granted Galan's request for divorce on April 29, 2008. In response to Navarro's argument that the Travis County divorce case prevailed, the Mexican court responded that Travis County never had jurisdiction over Galan. The Mexican decree states, "[T]he plaintiff [Galan], at all times, maintained that the said [Travis County] Court did not have jurisdiction, and if he responded to the claim filed against him, ... it was in a preventive manner." The court further explained that, "according to whatever might be decided in that aspect by the Court of the State of Texas, U.S.A., it can be seen in the foregoing that the plaintiff has not expressly submitted to the jurisdiction of the said Court." The court did not order any division of property and, since no culpability was found in the case, it did not assign any payment of cost and expenses.

On April 30, 2008, the day after the 2008 Mexican court entered the decree, Galan filed it for domestication with the 270th Judicial District Court of Harris County, Texas, pursuant to the "Uniform Enforce-

5. The actual day the interpleader was filed is not specified in the record.

6. The date of the intervention is provided by Galan in a pleading filed with the Harris County court. The actual pleading filed by Bank of America is not in the record provided.

7. The order of the Travis County court granting the interpleader does not appear in the record. This date is taken from Galan's brief.

8. The pleading does not specifically state that the court refers to the 2006 judgment; however, the finding directly preceding this finding states that Navarro was denied a divorce in Mexico, which refers to the 2006 judgment.

9. The Travis County court is presumably referring to Navarro's 2006 case, as there is no evidence in the record that the Travis County court was aware of the final judgment issued in Galan's 2008 case; however, the findings do not specifically identify which case the Travis County court examined.

10. Galan also apparently filed a notice of appeal of the Travis County judgment to the Third Court of Appeals in Austin, Texas on June 12, 2008 that was still pending at the time he filed his brief in August, 2008. The record does not contain any specific information regarding that appeal; it is only mentioned in Galan's pleadings in the Harris County court and in his brief on appeal.

ment of Foreign Judgments Act." [11] The full decree was filed in Spanish; only the last page of the decree was translated to English for filing. The notice of filing was mailed to Navarro at her address in Travis County, Texas, on April 30, 2008.

On May 8, 2008, Navarro filed a motion for new trial in the Harris County court, asserting three grounds for relief. First, she pointed out that the decree was not fully translated from Spanish to English. Second, she included a copy of the Travis County original petition and decree and asked the Harris County court to find that the 2008 Mexican divorce decree was of no effect. Third, Navarro argued that the enforcement of foreign country judgments is limited to money judgments as provided in Chapter 36 of the Texas Civil Practice and Remedies Code, also known as the Uniform Foreign Country Money–Judgments Recognition Act (UFCMJRA). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.001–36.008 (Vernon 2008). On May 12, 2008, Galan supplemented the filing of the Mexican divorce decree, pursuant to the UFCMJRA.

On May 23, 2008, Navarro filed a "Motion to Transfer Venue, or Alternatively Motion to Vacate Judgment, or Alternatively, Motion to Dismiss or, Alternatively First Amended Motion for New Trial" in the Harris County court. Navarro claimed that Harris County was not a proper venue because neither party had ever resided there and that the UFCMJRA required the judgment to be domesticated in the county of residence of the party against whom recognition was being sought. Navarro further argued that the Travis County divorce action was filed before Galan's Mexican divorce action and that the Travis County divorce decree was finalized before the 2008 Mexican judgment. Navarro again argued that the UFCMJRA only applies to money judgments.

On May 28, 2008, Galan responded to Navarro's motions, stating that the UFCMJRA found in Chapter 36 of the Civil Practice and Remedies Code was applicable to the Mexican divorce decree, that Harris County was a proper venue, and that the Travis County judgment was not finalized before the Mexican judgment. On August 20, 2008, after various other filings, the Harris County court denied all of Navarro's motions and domesticated Galan's Mexican divorce judgment.[12] Navarro filed a notice of appeal on July 23, 2008, appealing the Harris County court's domestication of the 2008 Mexican divorce decree.

## Uniform Foreign Country Money–Judgment Recognition Act

In her second issue, Navarro argues that the Mexican divorce judgment was

---

**11.** We note that the Uniform Enforcement of Foreign Judgments Act, found in Chapter 35 of the Texas Civil Practice and Remedies Code, pertains only to courts of other states within the United States, not courts of foreign countries. *See* TEX. CIV. PRAC & REM.CODE ANN. §§ 35.001–35.008 (Vernon 2008). Thus, as we discuss below and as the parties' subsequent filings all assert, Galan sought to file the Mexican divorce decree pursuant to the provisions found in Chapter 36 of the Civil Practice and Remedies Code, which is known as the Uniform Foreign Country Money–Judgments Recognition Act. *See* TEX. CIV. PRAC. &

REM.CODE ANN. §§ 36.001–36.008 (Vernon 2008).

**12.** On March 20, 2009, the Supreme Court of the State of San Luis Potosi, Mexico affirmed the lower Mexican court's judgment, stating that Galan did not voluntarily submit to the jurisdiction of the Travis County court. The Mexican court also stated that the Travis County judgment had no effect on the Mexican case because Article 121 of the Political Constitution of the United Mexican States reads, "The laws of a State shall have effect only in its own territory and therefore cannot be compulsory beyond its borders."

not subject to domestication pursuant to the UFCMJRA. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.001–36.008.

## A. Standard of Review

■ This Court has found that the issue of the enforcement of a foreign country judgment is properly framed as a question of law. *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 708 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Thus, we review de novo a trial court's ruling on recognition of a foreign country judgment. *Courage Co. v. Chemshare Corp.*, 93 S.W.3d 323, 331 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (citing *Reading & Bates Constr. Co.*, 976 S.W.2d at 708).[13]

■ Additionally, "[s]tatutory construction is a legal question, which is reviewed de novo to ascertain and give effect to the Legislature's intent." *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex.2009). When reviewing a statute, we first look at the plain and common meaning of the statute's words. *Id.*

## B. Analysis

Navarro contends that the Harris County trial court erred in domesticating the 2008 Mexican divorce judgment under the UFCMJRA because that statute does not apply to divorce judgments from foreign countries. Navarro further argues that the 2008 Mexican divorce judgment does

not contain any provision that grants or denies a sum of money.[14]

■ A judgment creditor may seek recognition of a foreign country judgment in Texas by filing "a final, authenticated copy of the foreign judgment in the judgment debtor's county of residence ('the Texas filing')." *Hernandez v. Seventh Day Adventist Corp., Ltd.*, 54 S.W.3d 335, 336 (Tex.App.-San Antonio 2001, no pet.) (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.0041–42). The judgment debtor must also "serve the judgment debtor with notice of the Texas filing." *Id.* "The Texas filing symbolizes both a plaintiff's original petition and a final judgment: the filing initiates the recognition proceeding, but also instantly creates an enforceable Texas judgment." *Id.* (citing *Dear v. Russo*, 973 S.W.2d 445, 446 (Tex.App.-Dallas 1998, no pet.)).

■ The UFCMJRA applies to a foreign country judgment. TEX. CIV. PRAC. & REM.CODE ANN. § 36.002. A foreign country judgment is "a judgment of a foreign country granting or denying a sum of money other than a judgment for ... support in a matrimonial or family matter." *Id.* § 36.001(2). Recognition of a foreign country judgment is conclusive between the parties "to the extent that it grants recovery or denial of a sum of money." *Id.* § 36.004; *Reading & Bates Constr. Co.*, 976 S.W.2d at 706; *see Dart v. Ba-*

---

**13.** We recognize that several courts have implied that abuse of discretion is the correct standard of review of a trial court's ruling on the recognition of a foreign country judgment, but this Court has "disagree[d] with that suggestion and point[ed] out that a trial court has no 'discretion' to improperly determine the law or misapply the law to the facts." *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 708 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

**14.** Galan argues that Navarro did not raise the issue of the inapplicability of the UFCMJRA to the 2008 Mexican decree in either of her motions presented to the Harris County court and therefore failed to preserve the error for review. Galan is incorrect. Navarro did raise the issue of inapplicability in both her Motion for New Trial and in her "Motion to Transfer Venue, or Alternatively Motion to Vacate Judgment, or Alternatively, Motion to Dismiss, or Alternatively First Amended Motion for New Trial."

*laam,* 953 S.W.2d 478, 479–80 (Tex.App.-Fort Worth 1997, no writ) (describing judgment recognized under UFCMJRA as "[a] foreign country judgment assessing money damages.").

The UFCMJRA expressly states that it applies only to "a judgment of a foreign country granting or denying a sum of money," and it further excludes "a judgment for support in a matrimonial or family matter." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 36.001(2). The UFCMJRA's express terms clearly provide that it applies only to money judgments. *See id.; Brosseau v. Ranzau,* 81 S.W.3d 381, 388 (Tex. App.-Beaumont 2002, pet. denied) (holding, when appellant was not asking for enforcement of portion of foreign country judgment that pertained to money, that the "UFCMJRA pertains to a money judgment" and that appellant's case did not fall within parameters of Act).[15] Thus, we conclude that the plain language of the UFCMJRA does not authorize the trial court to recognize the 2008 Mexican divorce decree.

We sustain Navarro's second issue.

Because Navarro's second issue is dispositive of the case, we decline to discuss Navarro's first issue arguing that the divorce granted in Travis County preceded the 2008 divorce granted in Mexico and thus precluded the Harris County court from domesticating the 2008 Mexican judgment.

## Conclusion

We vacate the Harris County court's judgment and dismiss Galan's petition to domesticate the 2008 Mexican divorce decree. Any outstanding motions are dismissed as moot.

15. We also note that Texas adopted the Uniform Foreign County Money–Judgments Recognition Act (UFCMJRA) in Chapter 36 of the Civil Practice and Remedies Code in 1981. *See* TEX. CIV. PRAC. & REM.CODE ANN., Uniform Foreign Money–Judgments Recognition Act, *Table of Jurisdictions Where Act Has Been Adopted* (Vernon 2008); TEX. GOV'T CODE ANN. § 311.028 (Vernon 2005) ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."); UNIF. FOREIGN MONEY-JUDGMENTS RECOGNITION ACT 13 U.L.A. pt. 2, p. 25 (Supp. 2009). In 2005, the Uniform Foreign–County Money Judgments Recognition Act was revised ("2005 Uniform Act"). UNIF. FOREIGN-COUNTRY MONEY JUDGMENTS RECOGNITION ACT § 1, 13 U.L.A. pt. 2, p. 9 (Supp. 2009). The purpose of the revision was:

not to depart from the basic rules or approach of the 1962 Act, which have withstood well the test of time, but rather to

update the 1962 Act, to clarify its provisions, and to correct problems created by the interpretation of the provisions of that Act by the courts over the years since its promulgation.

*Id.* at 8. One clarification made by the most recent version Uniform Act was to the applicability of the foreign-country judgment, and that version expressly provides:

(b) This [act] does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money, to the extent that the judgment is:
. . . .
(3) a judgment for divorce, support, or maintenance, or other judgment rendered in connection with domestic relations.

*Id.* § 3. Our readings of both Chapter 36 of the Civil Practice and Remedies and the 2005 Uniform Act draw us to the conclusion that the UFCMJRA does not apply to a divorce decree from a foreign country.