Marina PRESLEY, Appellant,

v.

N.V. MASUREEL VEREDELING, Appellee.

No. 01–11–00636–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 2012.

426

John Hatchett McFarland, Joyce McFarland + McFarland LLP, Houston, TX, for Appellant.

Steven J. Knight, Chamberlain, Hrdlicka, White, Williams & Aughtry, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, MASSENGALE, and HUDDLE.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Marina Presley, challenges the trial court's judgment entered in favor of appellee, N.V. Masureel Veredeling ("Masureel"), in Masureel's suit against Presley for enforcement of a foreign judgment. In two issues, Presley contends that the trial court erred in recognizing a judgment entered in favor of Masureel by a court located in Belgium.

We affirm.

## Background

Masureel is a company in the business of "yarns and fabrics finishing" with production facilities located in and around Korujtik, Belgium. Presley is President of Sudaglass Fiber Company, Inc. ("Sudaglass"). On September 6, 2000, Presley, individually and on behalf of Sudaglass, Presley's business partner Graham Miller, and a Masureel representative executed a joint venture agreement that provided that the parties wished to incorporate, under the laws of Belgium, a joint venture limited liability company for the purposes of representing and selling "continuous filament fiber worldwide." The joint venture agreement provided that it was to be "governed by, and construed and interpreted in accordance with the laws of Belgium." The joint venture agreement further provided that

> Any dispute between the Parties hereto arising out or in relation with the Agreement shall be exclusively and definitively settled in accordance with the rules of the International Chamber of Commerce (ICC), by one arbitrator appointed in accordance with these rules. The place of arbitration shall be Brussels, Belgium. . . .

Masureel, Presley, and Miller also executed, on September 6, 2000, a loan agreement, which was attached as an exhibit to the joint venture agreement. The loan agreement identified Masureel as the "[l]ender" and Presley and Miller as the "[b]orrower." The loan agreement recited that, "[w]ithin the framework of the joint venture agreement" and "subject to the terms and conditions of the present agreement," Masureel would lend to Presley and Graham $600,000 for specified purposes; the loaned amounts would be reimbursed "on the earliest of either the moment at which" specified shares in the joint venture were sold by Presley and Miller to Masu-

reel "under the terms of the [j]oint [v]enture [a]greement, by means of set off, or December 31, 2000"; Presley and Miller were jointly and severally liable for the performance of the obligations owed by the "[b]orrower"; and Masureel would be entitled to "immediate reimbursement" of the loaned amounts if, among other things, the "financial situation" of Sudaglass, Presley, or Miller was "modified to the extent that the ability of one of them to reimburse the loan appears jeopardi[z]ed." Under a section of the agreement entitled "Law and Jurisdiction," the loan agreement provided,

> This agreement shall be governed by and construed in accordance with Belgian law. The courts of Kortrijk have non exclusive jurisdiction for any dispute which may arise under or in connection with this agreement.

On October 30, 2000, Masureel, as lender, and Presley and Graham, as borrowers, executed a second loan agreement, evidencing a second loan by Masureel to Presley and Graham for an additional $51,466.32 that was to be used to "constitute" the joint venture company. Similar to the first loan agreement, the second loan agreement recited that the loaned amounts were to be reimbursed "on the earliest of either" the selling of specified shares to Masureel "under the terms of the joint venture agreement . . ., by means of set off, or December 31, 2000." And Masureel would be entitled to "immediate reimbursement" of the loaned amounts if the "financial situation" of Presley or Miller was "modified to the extent that the ability of one of them to reimburse the loan appears jeopardi[z]ed." The second loan agreement contained a "Law and Jurisdiction" clause identical to the same

clause in the first loan agreement, which provided that the agreement was to be governed by and construed in accordance with Belgium law and the courts of Kortrijk, Belgium had "non exclusive jurisdiction for any dispute which may arise under or in connection with this agreement."

Masureel funded the two loan agreements. Although the parties dispute the factual reasons for non-payment, Masureel was not reimbursed for the loan amounts by December 31, 2000, which was the date by which Masureel was entitled to reimbursement under the terms of both loan agreements. In 2001, Masureel filed a lawsuit against Presley, Miller, and Sudaglass, in the "Court of the First Instance of the District of Kortrijk (Belgium)." In its lawsuit, Masureel sought as its damages the amount of its loan payments for which it had not been reimbursed. Masureel argued that it was entitled to the repayment of its loans because the contractually-specified date of December 31, 2000 had passed, Presley and Graham had not fulfilled their obligations under the loan agreements, and the financial situation of Presley and Graham had changed to the extent that their ability to reimburse the loans had been jeopardized.[1]

In the Belgium court proceedings, Presley challenged the Belgium court's jurisdiction by contending that the joint venture agreement and loan agreement "constitute one whole." Presley asserted that the arbitration clause in the joint venture agreement, which applied to disputes "arising from or relating to" the joint venture agreement, controlled and mandated that the parties' entire dispute be submitted to arbitration. Presley also sought a judgment dissolving the joint venture agreement.

---

1. Masureel alleged that Presley and Graham appeared not to be the owners of the shares that they had committed to pledge.

On June 13, 2002, the Belgium court issued its judgment addressing all of the arguments presented by the parties. In its judgment, the Belgium court stated,

> Pursuant to section 1679 of the Code of Civil Procedure, the judge to whom a dispute subject to arbitration is submitted declares that he is not competent to take cognisance of that dispute at the request of one party, unless there is no valid agreement for arbitration with regard to that dispute or if this agreement has been terminated. The plea must be put forward before any other plea or means of defence.
>
> In this case, the plea was put forward by Marina Presley, Graham Miller and Sudaglass Fiber Company Inc. in their first pleadings of 22 November 2001 ("that the defendants, insofar as necessary, contest the competence of the court of first instance in Kortrijk"). In these pleadings, no other pleas or means of defence with regard to the merits of the case were formulated. Consequently, the plea must be examined.
>
> Since both loan agreements that are the basis of the main claim explicitly stipulate, in their articles 9, that the courts of Kortrijk are not exclusively competent to settle any dispute arising from or in connection with these agreements, whereas these loan agreements were concluded within the framework of the Joint Venture agreement, which in turn contains an ICC arbitration clause, *the court is of the opinion that the parties indeed had the intention to depart from the stipulations in the Joint Venture agreement, so that all disputes relating to the loan agreements fall within the competence of the ordinary courts (in this case: the courts of Kortrijk). The stipulation that the courts of Kortrijk*
>
> *are "not exclusively" competent means that the plaintiff has in any case the possibility to bring the dispute before the courts in Kortrijk.*
>
> The interpretation of article 9 of both loan agreements by Marina Presley, Graham Miller and Sudaglass Fiber Company Inc. cannot be accepted: it was indeed the intention of the parties to have disputes relating to the execution of both loan agreements settled "close to the place of residence of the loaner" (in this case: N.V. Masureel Veredeling), whereas disputes relating to the execution of the Joint Venture agreement would be submitted to ICC arbitration in Brussels. Nothing prevents contracting parties from making a distinction between disputes that must "go to court" and disputes that must be settled through arbitration.
>
> Taking into account the foregoing, the Court is competent to take cognizance of the main claim.

(Emphasis added).

After rejecting Presley's jurisdictional argument, the Belgium court ruled that both loan agreements had expired by their own terms and Masureel was contractually entitled, as of December 31, 2000, to demand reimbursement of the loan amounts. Thus, the court ordered Presley to pay Masureel the amount of its loans. The Belgium court also concluded that it did not have jurisdiction to entertain Presley's claim for dissolution and breach of the joint venture agreement.[2]

Presley appealed the Belgium court's judgment to the Court of Appeals of Ghent, which issued its opinion in March 2004. In regard to the issue of jurisdiction, the Belgium court of appeals stated that it agreed with the reasoning of the

---

2. The Belgium court's judgment indicates that it continued proceedings in regard to the proper determination of interest on the judgment.

Belgium trial court, and it noted that "the will of the parties in those loan agreements in relation to the competency clause can be described as very clear and does not require explanation." The court of appeals further stated,

> The state judge, confronted with a counterclaim on the merits of an agreement between the parties that have accepted an arbitration clause in that regard, will have to split the claims submitted to him and can only pronounce judgement on the claim in principal. The counterclaim may only be considered by the arbitration judge(s). This principle is applicable in full when the principal and counterclaim are related and consequently closely linked to each other so that it is desirable for them to be considered and judged together, in order to avoid solutions that may be irreconcilable (section 30 of the Judicial Code).
>
> Deviation from that principle may only be accepted in one exceptional case, i.e. indivisibility. The unity of the proceeding hereby impedes that the principal and counterclaims are considered by different court instances. In that case the state judge may consider the entire dispute and leave the valid arbitration agreement without effect.
>
> However there is only a case of indivisibility in accordance with section 31 of the Judicial Code, when the joint execution of the separate judgements arising from the dispute would be materially impossible.
>
> In view of the aforementioned considerations, the first judge correctly pro-

nounced himself without legal jurisdiction to consider the counterclaim on the basis of the arbitration clause stipulated in art. 30 of the 'joint-venture'-agreement concluded between the parties of 6 September 2000.

> It is in no way adequate for indivisibility that the principal and counterclaim are related and that it is in any event correct, if no arbitration clause should exist, to consider these together. The joint execution of the judgement of the state judge and the ruling of the arbitration institution must remain completely impossible, even if those two decisions should be contradictory (Martens, K. 'De arbitrageovereenkomst: nog steeds een probleemkind van de overheidsrechter, note in CASS, 9 November 1995, Rec. Cass., 1996, 381–382).
>
> However the appellants have not shown such indivisibility.

The Belgium court of appeals also stated that it "completely" agreed with the trial court and the trial court had no jurisdiction to consider Presley's counterclaim for breach of the joint venture agreement.

Masureel, in the underlying Harris County district court, filed on July 26, 2006 its Original Petition for Enforcement of Foreign Judgment.[3] Masureel noted that on June 13, 2002, the Belgium trial court had entered a final judgment in its favor against Presley. Masureel requested that the clerk promptly provide notice "to the party against whom recognition is sought."[4] The record reflects that Presley was served on November 16, 2006. On

---

**3.** *See* Tex. Civ. Prac. & Rem.Code Ann. 36.001–.008 (Vernon 2008).

**4.** *See id.* § 36.042(a), (b) (providing that at time foreign country judgment is filed, party seeking recognition of judgment "shall file with the clerk of the court an affidavit showing the name and last known post office ad-

dress of the judgment debtor and the judgment creditor" and "[t]he clerk shall *promptly mail notice of the filing of the foreign country judgment* to the party against whom recognition is sought at the address given and shall note the mailing in the docket").

December 18, 2006, Presley filed her Motion for Nonrecognition of Foreign Judgment[5] in which she contended that the trial court should refuse to recognize the Belgium trial court's judgment against her on the ground that the parties had agreed to arbitrate all disputes and she had been denied the opportunity to present a defense in violation of due process.

The trial court, recognizing the Belgium trial court's judgment, entered a judgment stating that the foreign judgment is "enforceable in the same manner as a judgment from Texas or any sister state."

### Recognition of Foreign Judgment

In her first and second issues, Presley argues that the trial court erred in recognizing the Belgium trial court's judgment because it "was obtained in a derogation of the parties' agreement to arbitrate disputes" and the Belgium trial court failed to provide Presley a fair trial.

Under the Uniform Foreign Money—Judgments Recognition Act (the "Act"), a judgment creditor may seek recognition of a foreign country judgment[6] in Texas by filing a final, authenticated copy of the foreign country judgment in the judgment debtor's county of residence. *Sanchez v. Palau*, 317 S.W.3d 780, 785 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.0041–42 (Vernon 2008)). The Act applies to a foreign country judgment that "is final and conclusive and enforceable where rendered, even though an appeal is pending or the judgment is subject to appeal." TEX. CIV. PRAC. & REM.CODE ANN. § 36.002(a)(1) (Vernon 2008). The Act fur-

ther provides that when a qualifying foreign country judgment is filed in accord with the Act, notice of the filing is given as provided by the Act, and a foreign country judgment is not otherwise "refused recognition" under the Act, then the judgment is "is conclusive between the parties to the extent that it grants or denies recovery of a sum of money" and is "enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit." *See id.* § 36.004 (Vernon 2008).

The Act sets forth the grounds for "nonrecognition" of a foreign country judgment. *See id.* § 36.005 (Vernon 2008). Relevant to the instant case, a foreign country judgment is "not conclusive" if it "was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." *See id.* § 36.005(a)(1). And a foreign country judgment "need not be recognized" if "the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court." *See id.* § 36.005(b)(5). A party contesting recognition of a foreign country judgment may file and serve a motion for nonrecognition no later than the 30th day after the date of service of the notice of filing of judgment is provided under the Act. *See id.* § 36.0044(a) (Vernon 2008). The party filing the motion for nonrecognition shall include with the motion all supporting affidavits, briefs, and other documentation; the party opposing the motion must file any response, including supporting affidavits, briefs, and other documentation not

---

5. *See id.* § 36.005.

6. A "foreign country judgment" is defined as "a judgment of a foreign country granting or denying a sum of money other than a judgment for: (A) taxes, a fine, or other penalty;

or (B) support in a matrimonial or family matter." *See id.* § 36.001(2). There is no dispute that the judgment entered by the Belgium court constitutes a foreign country judgment.

later than the 20th day after the date of service on that party of a copy of the motion for nonrecognition. *See id.* § 36.0044(b), (c).

▮ The party seeking to avoid recognition has the burden of proving a ground for nonrecognition and, unless that party satisfies his burden of proof by establishing one or more of the specific grounds for nonrecognition, the court is required to recognize the foreign country judgment. *Courage Co. v. Chemshare Corp.,* 93 S.W.3d 323, 331 (Tex.App.-Houston [14th Dist.] 2002, no pet.). By limiting the defenses available to a judgment debtor, the Act creates standards for recognizing foreign country judgments and prevents parties from relitigating issues that were conclusively settled by courts of foreign countries, unless such issues create an exception to recognition. *Beluga Chartering, B.V. v. Timber S.A.,* 294 S.W.3d 300, 304 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Dart v. Balaam,* 953 S.W.2d 478, 480 (Tex.App.-Fort Worth 1997, no writ). A trial court's enforcement of a foreign country judgment presents a question of law, and, thus, we review de novo a trial court's recognition of a foreign country judgment. *Sanchez,* 317 S.W.3d at 785; *Courage Co.,* 93 S.W.3d at 331.

Presley first argues that because the parties agreed to arbitrate any claims arising out of or relating to the joint venture agreement, and because the joint venture agreement and the loan agreements "constitute one agreement" and are "inextricably intertwined," Masureel obtained the Belgium court judgment "in violation of the parties' agreement to arbitrate." *See id.* § 36.005(b)(5).

▮ Initially, we note that Presley does not dispute that the loan agreements, as well as the joint venture agreement, specify that Belgium law is to be applied to the construction of the agreements. More-over, Presley does not cite, or discuss in any significant detail, Belgium law regarding the interpretation of the dispute resolution, choice of law, and forum selection clauses in the joint venture and loan agreements. Rather, Presley asserts that Masureel waived any argument regarding the application of Belgium law by failing to provide notice that it intended to raise an issue concerning the law of Belgium. *See* Tex.R. Evid. 203. We disagree. The record reveals that Masureel provided notice that it was relying on the judgments issued by the Belgium trial and appellate courts, and it furnished the trial court with complete copies of the Belgium trial court and court of appeals' judgments and English translations of these judgments. *See id.* The judgments reflect that the Belgium courts applied Belgium law in considering, and rejecting, Presley's arguments that the arbitration clause in the joint venture agreement should trump the choice of law and forum selection clauses in the loan agreements. Presley has not provided this Court with analysis challenging the Belgium courts' application of Belgium law. *See Autonation Direct.com, Inc. v. Thomas A. Moorehead, Inc.,* 278 S.W.3d 470, 472 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (stating that Texas courts will respect parties' choice of law provision and will "apply the law the parties chose" to substantive matters, including contract construction); *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F.Supp.2d 986, 988 (S.D.Tex.2004) (citation omitted) (stating that "Texas choice of law principles give effect to choice of law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the state"); *BDO Seidman v. Miller,* 949 S.W.2d 858, 860–61 (Tex.App.-Austin 1997, writ dism'd w.o.j.)

(stating that court would apply law of forum specified in parties' choice of law provision to determine whether valid, enforceable arbitration agreement existed).

■ Nevertheless, even if we were to consider the merits of Presley's arguments, which are based upon general principles of Texas contract construction law rather than Belgium law, we would conclude that the trial court did not err in denying Presley's motion for nonrecognition. In support of her argument that the Belgium trial court's judgment violated the parties' arbitration clause, Presley cites our sister court's opinion in *Courage.* In *Courage,* the Fourteenth Court of Appeals considered the proper construction of "plainly inconsistent" forum selection and choice of law clauses that were included within two separate agreements that were executed by the same parties seven months apart. 93 S.W.3d at 332–33. In analyzing the two conflicting agreements, the court noted that, under Texas law, "when a second contract deals with the same subject matter as the first contract made by the same parties, but does not specify whether or to what extent it is intended to operate in discharge or substitution," the contracts are to be "interpreted together, and to the extent that they are inconsistent, the later one prevails." *Id.* Because the court found that the agreements pertained to the same subject matter and were "inextricably intertwined," the court concluded that the parties intended for the subsequently-executed agreement "to supersede and to control." *Id.* at 335. Based upon these legal principles, and after noting that the parties had failed to submit their disputes to arbitration in accord with the clauses in the subsequently-executed agreement, the court affirmed the trial court's order refusing to recognize a foreign country judgment that had been entered by a court outside the scope of the required arbitration proceedings. *Id.* at 336.

*Courage* is substantively distinguishable. First, as noted above, Belgium, rather than Texas, law applies to the substance of this dispute. Second, although the joint venture agreement and the loan agreements refer to each other, the loan agreements plainly provide that any disputes arising under or in connection with the loan agreements may be submitted to the courts of Kortrijk, Belgium. By their express terms, the loan agreements are significantly narrower than the joint venture agreement. The only reasonable construction to apply to these agreements is to recognize that the parties expressly elected to allow disputes that arose from the loan agreements to be submitted to Belgium courts rather than arbitration. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006) (stating that we must examine and consider entire writing in effort to harmonize and to give effect to all provisions of contract so that none will be rendered meaningless); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994) (providing that specific provisions control over more general ones). Moreover, the second loan agreement, which contains a choice of law and forum selection clause that is identical to the first loan agreement, was executed after the joint venture agreement. *See Courage,* 93 S.W.3d at 332–33 (stating that "to the extent" contracts clauses "are inconsistent, the later one prevails"). Accordingly, we hold that the trial court did not err in recognizing the Belgium court's judgment on the ground that it was contrary to an arbitration agreement between the parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 36.005(b)(5).

■ Second, Presley argues that because the Belgium trial court refused to hear her defenses that were based upon

the joint venture agreement, the Belgium court's judgment was "fundamentally unfair and incompatible with due process." Presley asserts that Masureel's breach of the joint venture agreement "excused" or "offset" her breach of the loan agreements, and she complains that the Belgium court's disallowance of her defenses resulted in a judgment rendered by "a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." *See id.* § 36.005(a)(1).

■ Recognition of a foreign country judgment under the Act "does not require that the procedures used in the courts of a foreign country be identical to those used in the courts of the United States." *The Society of Lloyds v. Webb,* 156 F.Supp.2d 632, 639–40 (N.D.Tex.2001). Rather, the Act requires only that the foreign procedures are "compatible with the requirements of due process of law" and do "not offend against basic fairness." *Id.* at 640 (internal quotations and citations omitted). To establish a prima facie case that conclusive effect should be given to a foreign country judgment, courts have explained that a party may demonstrate that "the rendering court had jurisdiction over the person and subject matter, that there was timely notice and an opportunity to present a defense, that no fraud was involved, that the proceedings were according to a civilized jurisprudence are the same for both favored and nonfavored systems." *Id.* (citation omitted).

The record reflects that Presley appeared in the Belgium court proceedings, and the Belgium courts considered and addressed Presley's arguments that the entire matter should be submitted to arbitration pursuant to the joint venture agreement's arbitration clause. The record further reflects that the Belgium courts ruled that Presley's counterclaim for breach of the joint venture agreement against Masureel should be pursued in arbitration. Although Presley disputes the Belgium court's determination that Masureel's request for reimbursement under the loan agreements and the other disputes arising from the joint venture agreement are not "indivisible," we conclude that the record does not support Presley's assertions that the Belgium courts failed to provide her with an impartial tribunal and the procedures used by the Belgium courts were "incompatible" with due process of law. Presley has not cited any authority for the proposition that a ruling like that reached by the Belgium courts under the circumstance here, in which Presley was directed to pursue her affirmative claims in accord with an arbitration clause, renders the foreign country's procedures fundamentally unfair.[7] In sum, we hold that the trial court did not err in recognizing the Belgium court's judgment on the ground that it was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law. *See id.* § 36.005(a)(1).

We overrule Presley's first and second issues.

**Conclusion**

We affirm the judgment of the trial court.

---

7. Presley has not responded to or disputed Masureel's assertion that she has not yet pur-

sued her affirmative claims in arbitration.