# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51022

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2015

Lyle W. Cayce
Clerk

JOHN PAUL DEJORIA,

Plaintiff - Appellee

v.

MAGHREB PETROLEUM EXPLORATION, S.A.; MIDEAST FUND FOR MOROCCO, LIMITED,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

CARL E. STEWART, Chief Judge:

This appeal arises from the district court's grant of Plaintiff-Appellee's motion for non-recognition of a Moroccan judgment under Texas's Uniform Foreign Country Money-Judgment Recognition Act (the "Texas Recognition Act" or "Act"). The district court determined that Morocco's judicial system failed to provide impartial tribunals and procedures compatible with due process as required by the Texas Recognition Act and that the Moroccan judgment was thus unenforceable domestically. Because we conclude Plaintiff-Appellee has not met his burden under the Act, we REVERSE.

No. 14-51022

I.

John Paul DeJoria ("DeJoria") was a major investor in an American company called Skidmore Energy, Inc. ("Skidmore"), which was engaged in oil exploration and technology projects in Morocco. In pursuit of its goals, Skidmore formed and capitalized a Moroccan corporation, Lone Star Energy Corporation ("Lone Star") (now Maghreb Petroleum Exploration, S.A., or "MPE"). Corporations established under Moroccan law are required to have a "local" shareholder. For Lone Star, that local shareholder was Mediholding, S.A., owned by Prince Moulay Abdallah Alaoui, a first cousin of the Moroccan King, King Mohammed VI.

In March 2000, Lone Star entered into an "Investment Agreement" obligating it to invest in hydrocarbon exploration in Morocco. King Mohammed assured DeJoria that he would line up additional investors for the project to ensure adequate funding. Armadillo Holdings ("Armadillo") (now Mideast Fund for Morocco, or "MFM"), a Liechtenstein-based company, agreed to make significant investments in Lone Star. In the negotiations leading up to this agreement, Skidmore represented to Armadillo that Skidmore previously invested $27.5 million in Lone Star and that Lone Star's market value was roughly $175.75 million.

On August 20, 2000, King Mohammed gave a nationally televised speech to announce the discovery of "copious and high-quality oil" in Morocco. Three days later, then-Moroccan Minister of Energy Youssef Tahiri, accompanied by DeJoria and DeJoria's business partner Michael Gustin, traveled to the site and held a press conference claiming that the discovered oil reserves would fulfill Morocco's energy needs for decades. Moroccans celebrated this significant news, as the King's announcement was the only stimulus likely to revive Morocco's sluggish economy. The Moroccan stock market soared.

2

No. 14-51022

There was one major problem: the oil reserves were not as plentiful as announced. The "rosy picture" of Moroccan energy independence did not materialize, damaging both the Moroccan government's credibility and Lone Star's viability. As a result, the business relationship between MFM and Skidmore/DeJoria suffered. Lone Star replaced DeJoria and Gustin on Lone Star's Board of Directors.[1] DeJoria has not been to Morocco since 2000 and claims that his life would have been endangered had he returned.

Unhappy with the return on its initial investment in Lone Star, MFM sued Skidmore, DeJoria, Gustin, and a number of other Skidmore officers in their individual capacities in Moroccan court. MFM asserted that Skidmore fraudulently induced its investment by misrepresenting Skidmore's actual investment in Lone Star. MPE later joined as a plaintiff in the suit and claimed that Skidmore's fraudulent misrepresentations deprived Lone Star of necessary capital. In response, Skidmore filed two quickly-dismissed lawsuits against MPE, MFM, and other parties in the United States.

After nearly seven years of considering MPE and MFM's suit, the Moroccan court ruled against DeJoria and Gustin but absolved five of their co-defendants—including Skidmore—of liability. The court entered judgment in favor of MPE and MFM for approximately $122.9 million.

DeJoria sued MPE and MFM in Texas state court, challenging domestic recognition of the Moroccan judgment under Sections 36.005(a)(1), (a)(2), (b)(3), (b)(6), and (b)(7) of the Texas Recognition Act. MPE and MFM removed the action to federal district court based on diversity of citizenship. After reviewing the evidence presented by the parties on the state of the Moroccan judicial system and the royal interest in this particular suit, the district court granted DeJoria's motion for non-recognition, concluding that DeJoria had not

---

[1] DeJoria disputes that he was ever a director and asserts that he was merely a "passive investor."

3

No. 14-51022

been provided with procedures compatible with due process as required under Section 36.005(a)(1) of the Act. The district court did not address the remaining grounds for non-recognition that DeJoria asserted. MPE and MFM timely appealed.

II.

Because federal jurisdiction in this case is based on diversity of citizenship, we apply Texas law regarding the recognition and enforcement of foreign judgments. *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1003 (5th Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The enforcement of foreign judgments in Texas is governed by the Texas Recognition Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–36.008 (West 2012).

A.

We first consider the standard of review applicable to the district court's recognition decision. This court has previously applied both de novo review and abuse of discretion to evaluate a district court's recognition decision. *Compare Derr v. Swarek*, 766 F.3d 430, 436 (5th Cir. 2014) (recognizing inconsistency but applying abuse of discretion in Mississippi recognition case), *with Sw. Livestock & Trucking Co. v. Ramon*, 169 F.3d 317, 321 (5th Cir. 1999) (applying de novo review under Texas Recognition Act). In *Derr*, we looked to Mississippi law in deciding that abuse of discretion review applied. 766 F.3d at 436 n.2. Thus, we similarly look to Texas law to determine the applicable standard of review here.[2]

---

[2] At oral argument, DeJoria claimed that the district court proceedings "most closely resembled a bench trial on documentary evidence" and that the standard of review is thus clear error. We disagree. The Texas Recognition Act specifically provides that a "party filing [a] motion for nonrecognition shall include with the motion all supporting affidavits, briefs, and other documentation" and the "party opposing the motion must file any response, including supporting affidavits, briefs, and other documentation." Tex. Civ. Prac. & Rem. Code Ann. § 36.0044(b), (c). Texas courts have not treated this procedure as establishing a

No. 14-51022

The Texas Recognition Act establishes three mandatory grounds and seven discretionary grounds for non-recognition of a foreign judgment. *See Beluga Chartering B.V. v. Timber S.A.*, 294 S.W.3d 300, 304 (Tex. App.—Houston [14th Dist.] 2009). Whether the judgment debtor established that one of these non-recognition provisions applies is a question of law reviewed de novo.[3] *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 708 (Tex. App.—Houston [1st Dist.] 1998); *see also Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425, 432 (Tex. App.—Houston [1st Dist.] 2012) ("A trial court's enforcement of a foreign country judgment presents a question of law, and, thus, we review de novo a trial court's recognition of a foreign country judgment."); *Sanchez v. Palau*, 317 S.W.3d 780, 785 (Tex. App.—Houston [1st Dist.] 2010). Accordingly, we review de novo the district court's decision not to recognize the foreign judgment.[4]

## B.

In Texas, the recognition of foreign judgments is governed by the Texas Recognition Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–36.008. Under the Act, unless a ground for non-recognition applies, the judgment of a foreign country is "conclusive between the parties" and "enforceable in the same

---

bench trial. *See Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425, 431–32 (Tex. App.—Houston [1st Dist.] 2012) (explaining Texas's procedure for contesting recognition of a foreign judgment and applying de novo review to the trial court's decision).

[3] If the district court finds that one of the seven discretionary grounds applies, it then makes a "secondary" decision regarding non-recognition. *See Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 331 n.23 (5th Cir. 2002). The district court's secondary discretionary decision "can only be set aside upon a clear showing of abuse." *Khreich*, 915 F.2d at 1004.

[4] Nevertheless, applying an abuse of discretion standard would not alter our decision here. As this court and Texas courts have recognized, a mistake of law may be corrected regardless of the standard of review applied. *See Derr*, 766 F.3d at 436 n.2 ("[L]ittle turns on whether we label review of this particular question abuse of discretion or de novo, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." (quoting *Ramon*, 169 F.3d at 321 n.4)); *Reading & Bates Constr. Co.*, 976 S.W.2d at 708 (noting that trial court has "no 'discretion'" to improperly determine or to misapply law) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

manner as a judgment of a sister state that is entitled to full faith and credit." *Id.* § 36.004. The ten statutory grounds for non-recognition are the only defenses available to a judgment debtor.[5] *See Beluga Chartering B.V.*, 294 S.W.3d at 304.

The party seeking to avoid recognition of a foreign judgment has the burden of establishing one of these statutory grounds for non-recognition. *Presley*, 370 S.W.3d at 432; *see also Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2011) ("Unless the judgment debtor satisfies its burden of proof by establishing one or more of the specific grounds for nonrecognition, the court is required to recognize the foreign judgment."). DeJoria asserts, as mandatory grounds for non-recognition of the Moroccan judgment, that the Moroccan judicial system does not provide due process and that the Moroccan court lacked personal jurisdiction. DeJoria also asserts, as a discretionary ground for non-recognition, that the Moroccan judgment should not be recognized because Moroccan courts do not recognize Texas judgments.

---

[5] Section 36.005(a) provides the mandatory grounds for non-recognition: "(1) the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign country court did not have personal jurisdiction over the defendant; or (3) the foreign country court did not have jurisdiction over the subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a).

Section 36.005(b) provides the discretionary grounds: "(1) the defendant in the proceedings in the foreign country court did not receive notice of the proceedings in sufficient time to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; (6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or (7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of 'foreign country judgment.'" Tex. Civ. Prac. & Rem. Code Ann. § 36.005(b).

No. 14-51022

C.

DeJoria contends that the Moroccan judgment is unenforceable because the Moroccan judicial system does not meet due process standards. Under the Texas Recognition Act, a foreign judgment is not conclusive and is thus unenforceable if "the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a)(1). "[T]he statute requires only the use of procedures *compatible* with the requirements of due process[. T]he foreign proceedings need not comply with the traditional rigors of American due process to meet the requirements of enforceability under the statute." *Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 330 (5th Cir. 2002) (internal quotations omitted). That is, the foreign judicial system must only be "fundamentally fair" and "not offend against basic fairness." *Id.* (internal quotations omitted); *see also Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 688 (7th Cir. 1987) (evaluating a similar provision of the Illinois Recognition Act and noting that "the issue is only the basic fairness of the foreign procedures"). This concept sets a high bar for non-recognition. *See Turner*, 303 F.3d at 330 n.16 ("A case of serious injustice must be involved.") (quoting Uniform Foreign Money-Judgments Recognition Act § 4 cmt., U.L.A. (1986)).

The court's inquiry under Section 36.005(a)(1) focuses on the fairness of the foreign judicial system as a whole, and we do not parse the particular judgment challenged. *See Turner*, 303 F.3d at 330. The plain language of the Texas Recognition Act requires that the foreign judgment be "rendered [only] under a *system* that provides impartial tribunals and procedures compatible with due process." *Id.* (internal quotations omitted); *see also Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 477–78 (7th Cir. 2000) (emphasizing that a similar provision of the Illinois Recognition Act does not allow the reviewing court to

evaluate "particular judgments"). Accordingly, we now consider whether Morocco's judicial system as a whole is "fundamentally fair" and inoffensive to basic notions of fairness.

To justify non-recognition of the Moroccan judgment, DeJoria argues that Morocco's judiciary is made up of judges beholden to the King and therefore lacks independence. Under the Moroccan Constitution, Morocco is an executive monarchy headed by a King who serves as the supreme leader. As described in a 2003 World Bank publication (the "World Bank Report"), the King has the final authority over the appointment of judges. A United States Agency for International Development report (the "USAID Report")[6] observes that the Moroccan judicial system is "permeable to political influence" and that judges are "vulnerable to political retribution." State Department Country Reports also question the independence of the Moroccan judiciary. For example, the 2009 State Department Country Report explains that "in practice the judiciary . . . was not fully independent and was subject to influence, particularly in sensitive cases." Moroccan courts also battle a public perception of ineffectiveness. In 2012, nearly 1,000 Moroccan judges protested for "greater independence for the judiciary." Though this evidence led the district court to find that Morocco's judicial system was not compatible with the requirements of due process, we conclude that it does not present the entire picture.[7]

---

[6] We note that the USAID Report was prepared by an independent contractor and contains the following disclaimer: "The views expressed in this publication do not necessarily reflect the views of the United States Agency for International Development or the United States Government."

[7] MPE and MFM contend the district court improperly conducted outside Internet research on this issue. The district court relied on the Seventh Circuit's decision in *Ashenden*, concluding that whether a foreign judicial system meets due process "is a question about the law of a foreign nation" and that a court may thus consider "any relevant material or source." *Ashenden*, 233 F.3d at 477 (citing Fed. R. Civ. P. 44.1). Because the district court's outside research does not influence our analysis, we need not decide whether Rule 44.1 actually applies.

No. 14-51022

Azzedine Kabbaj, a Moroccan attorney who has been practicing for thirty-five years, testified that Moroccan judges must pass an admissions test and complete two years of judge-specific training. Kabbaj noted that the Moroccan system "places great emphasis" on providing "actual notice" of lawsuits to defendants, allows for numerous challenges to the appointments of experts, and gives defendants a de novo appeal after an initial judgment. Abed Awad, an adjunct professor at Rutgers University School of Law, further explained that the procedures followed in Moroccan commercial courts resemble those followed in United States courts.[8] The law firm of DeJoria's expert advertised Morocco's judicial system as "adher[ing] to international standards." The same USAID Report cited by DeJoria notes that the King's government "has made judicial reform one of its key objectives," explains that the "rule of law" is a "critical factor" in Morocco's development, and observes that the Moroccan government "is making strides" toward building a state reliant on the rule of law. The USAID Report, while acknowledging fundamental concerns about judicial independence, concludes that the "Monarchy's interest in reforming the justice sector is a positive sign." The World Bank Report describes the advances in Morocco's judicial system as "indisputable" and recognizes Morocco's "enhanced drive toward an independent judiciary." Finally, the State Department has recognized that the Moroccan government has implemented reforms intended to increase judicial independence and impartiality.

---

[8] While DeJoria described the testimony of Kabbaj and Awad as "unsupported, conclusory opinions," such expert testimony is relevant in recognition proceedings. *See Khreich*, 915 F.2d at 1005–06 (using expert testimony to determine reciprocity under the Texas Recognition Act); *see also S.C. Chimexim S.A. v. Velco Enters., Ltd.*, 36 F. Supp. 2d 206, 214 (S.D.N.Y. 1999) (relying on expert testimony to evaluate due process under New York's statute governing enforcement of foreign judgments).

No. 14-51022

The Texas Recognition Act does not require that the foreign judicial system be perfect.  Instead, a judgment debtor must meet the high burden of showing that the foreign judicial system as a whole is so lacking in impartial tribunals or procedures compatible with due process so as to justify routine non-recognition of the foreign judgments.  *See Turner*, 303 F.3d at 330. DeJoria has not met this burden.  Based on the evidence in the record, we cannot agree that the Moroccan judicial system lacks sufficient independence such that fair litigation in Morocco is impossible.[9]  The due process requirement is not "intended to bar the enforcement of all judgments of any foreign legal system that does not conform its procedural doctrines to the latest twist and turn of our courts." *Ashenden*, 233 F.3d at 476.  Thus, the record here does not establish that any judgment rendered by a Moroccan court is to be disregarded as a matter of course.

Even under DeJoria's characterization, the Moroccan judicial system would still contrast sharply with the judicial systems of foreign countries that have failed to meet due process standards.  For example, in *Bank Melli Iran v. Pahlavi*, the Ninth Circuit refused to enforce an Iranian judgment and concluded that the Iranian judicial system did not comport with due process standards. 58 F.3d 1406, 1411–13 (9th Cir. 1995).  The court relied on official reports advising Americans against traveling to Iran during the relevant time period and identifying Iran as an official state sponsor of terror.  *Id.* at 1411. Further, the court noted that Iranian trials were private, politicized proceedings, and recognized that the Iranian government itself did not "believe in the independence of the judiciary."  *Id.* at 1412.  Judges were subject to

---

[9] Although our inquiry focuses on Morocco's judicial *system*, we also observe that the record does not establish that the King actually exerted any improper influence on the Moroccan court in this case.  For example, the Moroccan court (1) appointed experts, (2) took seven years to reach a decision, (3) awarded a lesser judgment than the expert recommended, and (4) absolved five defendants—including DeJoria's company Skidmore—of liability.

continuing scrutiny and potential sanction and could not be expected to be impartial to American citizens. *Id.* Further, "revolutionary courts" had the power to usurp and overrule decisions of the Iranian civil courts. *Id.* Attorneys were also warned against "representing politically undesirable interests." *Id.* Based on this evidence, the court concluded that the Iranian judicial system simply could not produce fair proceedings. *Id.* at 1412–13; *see also Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1357 (11th Cir. 1982) ("[T]he Islamic regime now governing Iran has shown a deep hostility toward the United States and its citizens, thus making effective access to the Iranian courts unlikely.").

Similarly, in *Bridgeway Corp. v. Citibank*, the Second Circuit declined to recognize a Liberian judgment rendered during the Liberian Civil War. 201 F.3d 134, 144 (2d Cir. 2000). There, the court observed that, during the relevant time period, "Liberia's judicial system was in a state of disarray and the provisions of the Constitution concerning the judiciary were no longer followed." *Id.* at 138. Further, official State Department Country Reports noted that the Liberian judicial system—already marred by "corruption and incompetent handling of cases"—completely "collapsed" following the outbreak of fighting. *Id.* Because the court concluded that there was "sufficiently powerful and uncontradicted documentary evidence describing the chaos within the Liberian judicial system during the period of interest," it refused to enforce the Liberian judgment. *Id.* at 141–42.

*Pahlavi* and *Bridgeway* thus exemplify how a foreign judicial system can be so fundamentally flawed as to offend basic notions of fairness.[10] Unlike the

---

[10] Though *Pahlavi* and *Bridgeway* involved California and New York law, respectively, those states' recognition statutes each provided that a foreign judgment was not enforceable if "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process [of law]." *Pahlavi*, 58 F.3d at 1410;

No. 14-51022

Iranian system in *Pahlavi*, there is simply no indication that it would be impossible for an American to receive due process or impartial tribunals in Morocco. In further contrast with *Pahlavi*, there is no record evidence of a demonstrable anti-American sentiment in Morocco; in fact, American law firms do business in Morocco.[11] While the judgment debtor in *Pahlavi* could not have retained representation in Iran, Skidmore—a co-defendant in the Moroccan case—did briefly retain Moroccan attorney Azzedine Kettani until a conflict of interest forced his withdrawal. One expert opined that it is "not at all uncommon" for Moroccan attorneys to represent unpopular figures in Moroccan courts. *Bridgeway* presents an even more stark contrast. Morocco's judicial system is not in a state of complete collapse, and there is no evidence that Moroccan courts or the Moroccan government routinely disregard constitutional provisions or the rule of law. Because Morocco's judicial system is not in such a dire situation, it does not present the unusual case of a foreign judicial system that "offend[s] against basic fairness." *Turner*, 303 F.3d at 330 (internal quotations omitted).

The Texas Recognition Act's due process standard requires only that the foreign proceedings be fundamentally fair and inoffensive to "basic fairness." *Presley*, 370 S.W.3d at 434. This standard sets a high bar for non-recognition. The Moroccan judicial system does not present an exceptional case of "serious injustice" that renders the entire system fundamentally unfair and incompatible with due process. The district court thus erred in concluding that non-recognition was justified under Section 36.005(a)(1) of the Texas Recognition Act.

---

*Bridgeway*, 201 F.3d at 137. These provisions are nearly identical to the Texas provision at issue here.

[11] For example, DeJoria's law firm in this appeal, Baker & McKenzie, has an office in Casablanca, Morocco.

No. 14-51022

D.

As alternative grounds for non-recognition, DeJoria asserts that Morocco does not recognize judgments rendered by Texas courts and that the Moroccan court lacked personal jurisdiction.[12]  Although the district court did not reach these arguments, its judgment may be affirmed "on any grounds supported by the record." *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007) (quoting *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992)).  Therefore, we address these arguments in turn.

1.

Under the Texas Recognition Act, a court may refuse to enforce a foreign judgment if "it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of 'foreign country judgment.'"  Tex. Civ. Prac. & Rem. Code Ann. § 36.005(b)(7).  This "reciprocity" ground for non-recognition is discretionary.  *Beluga Chartering B.V.*, 294 S.W.3d at 304 & n.1.  Even if reciprocity is lacking, a reviewing court may still elect to recognize the foreign judgment.  *See Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 518–19 (5th Cir. 1981) ("Even though . . . the trial court [has] discretion to recognize the judgment despite nonreciprocity by the foreign forum, . . . the clear message . . . is that foreign judgments which would not be reciprocally recognized if made in Texas are not favored.").  The party seeking non-recognition has the burden of establishing non-reciprocity. *Khreich*, 915 F.2d at 1005; *Presley*, 370 S.W.3d at 432.  The central question is whether the foreign country would enforce a Texas judgment "to the same

---

[12] In the district court, DeJoria raised "public policy" and "inconvenient forum" challenges to recognition of the Moroccan judgment, both of which are discretionary grounds for non-recognition under Section 36.005(b) of the Texas Recognition Act. These arguments were not raised on appeal and are thus waived. *See United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009) ("[A] party waives any argument that it fails to brief on appeal.").

extent" that it would enforce a judgment rendered within its own borders. *Reading & Bates Constr. Co.*, 976 S.W.2d at 710.

In *Khreich*, we affirmed the district court's refusal to recognize an Abu Dhabi judgment for lack of reciprocity. 915 F.2d at 1006. There, the party seeking non-recognition provided the affidavit of an American attorney practicing in Abu Dhabi. *Id.* at 1005. This testimony provided that no Abu Dhabi courts had previously enforced United States judgments, that there had been no attempts to enforce United States judgments in Abu Dhabi courts, that Abu Dhabi courts preferred to resolve disputes under local law, and that it was doubtful that Abu Dhabi courts would exercise their discretion to actually enforce an American judgment. *Id.* at 1005–06. The only contrary testimony offered was a translation of Abu Dhabi law relating to recognition of foreign judgments. *Id.* We concluded that this evidence was sufficient to find non-reciprocity. *Id.* at 1006.

DeJoria contends that his showing on lack of reciprocity is "at least as strong" as the showing we found sufficient in *Khreich*. This argument, however, fails to consider MPE and MFM's rebuttal evidence. In contrast with the minimal showing in *Khreich*, MPE and MFM have identified the relevant statutory provisions under Moroccan law and offered expert testimony that Moroccan courts would recognize American judgments and have routinely recognized other foreign judgments. Thus, MPE and MFM have done more than merely point to a "translation of [Moroccan] law" or simply identify a relevant statutory provision. *See Khreich*, 915 F.2d at 1005–06; *see also Karim v. Finch Shipping Co.*, 265 F.3d 258, 272 (5th Cir. 2001) (finding that, in the context of determining foreign law, the party seeking recognition in *Khreich* "did not call any expert witnesses" and provided only "a copy of a statute and general materials").

No. 14-51022

Further, Moroccan law specifically allows for the recognition of foreign judgments.[13] Article 430 of the Morocco Code of Civil Procedure provides that, in order to enforce a foreign judgment, a Moroccan court "shall determine the judgment is genuine and that the foreign court that issued the judgment had jurisdiction, and shall verify that no part of the judgment violates Moroccan public policy." On its face, Article 430 seems to answer the reciprocity question; however, DeJoria insists that it is uncertain whether Article 430 would actually allow recognition of a United States judgment. DeJoria's expert, Kettani, observed "that there is no certainty as to how . . . the statutory criteria of 'public order' . . . would be used in practice to deny enforcement." Such speculation is insufficient to justify non-enforcement. The statutory criteria for non-enforcement under Article 430, lack of jurisdiction and violation of public policy, are no different than three of the grounds for non-recognition under the Texas Recognition Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a)(2), (a)(3), (b)(3).

DeJoria asserts that MPE and MFM cannot demonstrate reciprocity because "Morocco never has [recognized a Texas judgment], and what it might do in the future is sheer speculation." The Texas Recognition Act, however, gives the court discretion to not recognize a judgment if "it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in [Texas] that, but for the fact that they are rendered in [Texas], conform to the definition of 'foreign country judgment.'" Tex. Civ. Prac. & Rem. Code Ann. § 36.005(b)(7). The plain language of this provision requires the judgment debtor to demonstrate that the foreign country does not recognize Texas judgments *because* they were rendered in Texas. Therefore, MPE and MFM are not required to prove that Morocco has previously

---

[13] This court's understanding of the content of the Morocco Code of Civil Procedure is based on the undisputed evidence presented to the district court.

15

recognized Texas judgments. Instead, the burden is on DeJoria to show that Morocco would not recognize an otherwise enforceable foreign judgment only because the judgment was rendered in Texas. *See id.* 36.005(b)(7); *Khreich*, 915 F.2d at 1005. DeJoria provides no evidence that this is the case. Thus, the mere fact that a Moroccan court has not previously recognized a Texas judgment is insufficient to establish non-reciprocity.[14]

Finally, DeJoria argues that a Moroccan court would not enforce an American judgment impinging on Moroccan royal interests without looking into the merits of the case. Even if a Moroccan court would look to the underlying merits of a Texas judgment rendered under similar circumstances, such an inquiry alone is not sufficient to establish non-reciprocity. For example, though Belgium's recognition statute authorizes some inquiry into the merits of the underlying foreign claim, American courts have still previously enforced Belgian judgments. *See Presley*, 370 S.W.3d at 434 (enforcing Belgian judgment under Texas Recognition Act); *McCord v. Jet Spray Int'l Corp.*, 874 F. Supp. 436, 439–40 (D. Mass. 1994) ("The fact that the Belgian courts allow a limited inquiry into the substance of the action does not erase the fact that Belgium officially recognizes a cause of action based upon an American judgment.").

We conclude that DeJoria has not established, as required by the Texas Recognition Act, that Morocco would refuse to recognize an otherwise enforceable foreign judgment simply because it was rendered in Texas.

---

[14] In fact, courts have rejected non-reciprocity arguments or chosen to recognize foreign judgments even where there was no evidence of a foreign court previously recognizing an American judgment. *See, e.g.*, *Tahan v. Hodgson*, 662 F.2d 862, 868 & n.25 (D.C. Cir. 1981) (noting that the presence of an Israeli reciprocity statute, cases allowing other foreign judgments, and economic cooperation between Israel and the United States was sufficient to find reciprocity); *McCord v. Jet Spray Int'l Corp.*, 874 F. Supp. 436, 440 (D. Mass. 1994) (finding that Belgium law "officially recognizes a cause of action based upon an American judgment"); *Reading & Bates Constr. Co.*, 976 S.W.2d at 710 (considering whether Canada "would recognize and enforce a (hypothetical) Texas judgment").

No. 14-51022

2.

Under the Texas Recognition Act, a court cannot enforce a foreign judgment if the foreign court did not have personal jurisdiction over the defendant.  Tex. Civ. Prac. & Rem. Code Ann. § 36.005(a)(2); *see Haaksman*, 355 S.W.3d at 850.  The party seeking non-recognition must prove lack of personal jurisdiction.  *See The Courage Co. v. The ChemShare Corp.*, 93 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2002).  Personal jurisdiction consists of two components: service of process and amenability to jurisdiction. *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983).

a.

We turn first to service of process, which is "simply the physical means by which . . . jurisdiction is asserted." *Id.*  We apply Moroccan law to determine whether service of process was proper.  *See, e.g.*, *Naves v. Nat'l W. Life Ins. Co.*, No. 03-08-00525-CV, 2009 WL 2900755, at *2 (Tex. App.—Austin 2009) (evaluating service of process under Brazilian law).  One expert explained that service of process under Moroccan law is proper if it is carried out through "means that ensure the recipient receives actual notice."  There is no dispute that DeJoria had actual notice of the Moroccan lawsuit.  DeJoria, however, argues that service could not be proper under Moroccan law until Morocco became a signatory to the Hague Convention in 2011.  Article 37 of the Morocco Code of Civil Procedure, which was in effect at the time of the suit, provides: "If the recipient resides in a foreign country, [the notification of the suit must be] transmitted through the hierarchy to be sent through the diplomatic channel, subject to the provisions of the diplomatic conventions."  Because there was no convention or treaty governing service on a foreign defendant, DeJoria contends there was no statutory means to ensure actual notice and that this situation "falls squarely" within the Seventh Circuit's decision in *Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir. 1981).

17

No. 14-51022

In *Koster*, the Seventh Circuit, in dicta, explained that the Dutch statute governing service of process did not require that service on a foreign defendant be made by certified mail or any other reasonable means; instead, the method of service was left up to the discretion of the Dutch Department of Foreign Affairs. 640 F.2d at 81 n.3. The court determined that this method of service violated due process. *Id.* Because DeJoria received actual notice, we conclude that his reliance on *Koster* is misplaced. The *Koster* court noted that the issue of service was of "particular significance" because the defendant claimed it never received notice of the foreign lawsuit. *Id.* In contrast, DeJoria received a copy of the Moroccan lawsuit, even though the process server's access to DeJoria's property was allegedly obtained deceptively. DeJoria assumed that the documents were "related to the Moroccan lawsuit" and turned them over to his attorneys. In addition, Skidmore filed an anti-suit injunction against the Moroccan lawsuit and included an affidavit from DeJoria. Though DeJoria disputes whether service was technically proper, it is evident from the record that DeJoria had actual notice of the Moroccan lawsuit.

Regardless, foreign courts are not required to adopt "every jot and tittle of American due process." *Ashenden*, 233 F.3d at 478. Instead, only "the bare minimum requirements" of notice must be met. *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003). The Supreme Court has emphasized that a basic requirement of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Thus, while due process requires only "reasonably calculated" notice, DeJoria had actual notice of the Moroccan lawsuit, which "more than satisfie[s]" his due process rights and meets the bare minimum requirements of notice sufficient to enforce a judgment. *United*

18

No. 14-51022

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010); *see also Int'l Transactions, Ltd.*, 347 F.3d at 594; *Ma v. Cont'l Bank N.A.*, 905 F.2d 1073, 1076 (7th Cir. 1990) ("[N]ot all of the technical requirements of service are sufficient grounds for a collateral attack. Service is designed to produce knowledge. . . .").

b.

Finally, DeJoria challenges his amenability to jurisdiction. "Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law." *DeMelo*, 711 F.2d at 1264. Courts generally apply the standards of the rendering court to determine jurisdiction. *See, e.g.*, *Naves*, 2009 WL 2900755, at *2 (applying Brazilian law to determine personal jurisdiction).

DeJoria argues that the Moroccan court lacked jurisdiction because no curator was appointed. Under Article 39 of the Morocco Code of Civil Procedure, "[i]n all cases where the domicile and residence of a party are unknown, the judge appoints, in the capacity as curator, an officer of the court to whom the summons is notified." Expert testimony revealed that under Moroccan law, the failure to appoint a curator where required violates due process and can result in nullification of a judgment. However, expert testimony further clarified that a "Moroccan court would never appoint a curator for a defendant with a known address." The Moroccan court was not required to appoint a curator, because DeJoria's domicile and residence were known. In fact, DeJoria was served with process at his home and was later served with the judgment in Texas. Accordingly, we conclude that Article 39 is not applicable to this case.

Under Moroccan law, if the defendant is not domiciled in Morocco, jurisdiction is proper at the domicile or place of residence of the plaintiff. Article 27 of the Morocco Code of Civil Procedure provides: "If the defendant

has no domicile or residence in Morocco, [a suit] may be brought before the court of the domicile or residence of the applicant or one of them if there are several." Thus, jurisdiction was proper in Morocco, where MPE was domiciled.

Further, jurisdiction is proper even under the stricter requirements of American due process. "Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (internal quotations omitted). "The long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who 'commits a tort in whole or in part in this state.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2)). "Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *Id.* at 150.

Applying the Texas standard as if it were the standard applied by Moroccan courts, we conclude that Morocco obtained personal jurisdiction over DeJoria. "[A]llegations that a tort was committed in [the forum] satisfy [the] long-arm statute. . . ." *Id.* at 149. Here, MPE and MFM alleged that DeJoria committed torts in Morocco related to his investment in Skidmore and its relationship with Lone Star. Specifically, MFM alleges that DeJoria made fraudulent misrepresentations regarding his investment in Lone Star, and MPE alleges that DeJoria's misrepresentations deprived it of necessary capital. These allegations are sufficient to satisfy the long-arm statute.

"A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)

(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  DeJoria voluntarily started a Moroccan corporation to explore for oil reserves in Morocco through Lone Star.  DeJoria's investment activity was in Morocco.  DeJoria visited Morocco in connection with his relationship with Lone Star, including a visit to a drilling site with Morocco's then-Energy Minister.  Nearly all of the alleged acts and omissions in the underlying case occurred in Morocco.  DeJoria thus has sufficient, purposeful contacts with Morocco to render jurisdiction reasonable.

"In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154.  "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id.* at 154–55.  While litigation in Morocco would have imposed a burden on DeJoria, that burden would not be so heavy as to render jurisdiction unreasonable.  Moroccan courts do not require that the defendant appear personally, and DeJoria could have litigated entirely through counsel without returning to Morocco.  When weighed against Morocco's substantial interest in adjudicating a dispute involving a Moroccan corporation and Moroccan resources, DeJoria's burden of litigating in Morocco would not have been unfair in relation to his contacts with the forum.  Because DeJoria voluntarily engaged in purposeful contacts with Morocco, the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 154.

DeJoria has not established that the Moroccan court lacked personal jurisdiction, and non-recognition is thus not justified under Section 36.005(a)(2) of the Act.

No. 14-51022

III.

For the foregoing reasons, the judgment of the district court is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion.