

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00209-CV

———————————————————

CSHK DUBAI CONTRACTING LLC, Appellant

V.

SADRUDDIN ENAYAT ALI, ABDUL SULTAN JAMAL, AND WAZIR ALI
DARIDIA, Appellees

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 23-6786-431

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

This dispute—which spans multiple decades, continents, and court systems—arises out of Appellant CSHK Dubai Contracting LLC's contract with Trident International Holdings FZCO[1] to build a residential tower in Dubai.[2] After a dispute arose between CSHK and Trident regarding Trident's payments under the contract, CSHK initiated several legal proceedings in Dubai against Trident and Trident's founders, Appellees Sadruddin Enayat Ali, Abdul Sultan Jamal, and Wazir Ali Daridia.[3] Ultimately, CSHK obtained a judgment (the Dubai Judgment) from a Dubai court awarding it AED[4] 182,887,998.37 (roughly $50 million). Because Appellees resided in Texas following the entry of the Dubai Judgment, CSHK filed a lawsuit in the Texas trial court asking that the court recognize the Dubai Judgment under the Uniform Foreign-Country Money Judgments Recognition Act (the Act). *See* Tex. Civ.

---

[1]Some portions of the record refer to Trident as "Trident International Holdings FZCO," while other portions of the record refer to it as "Trident International Holdings Company FZC." We will simply refer to the entity as "Trident."

[2]Dubai is one of seven sovereign Emirates that comprise the United Arab Emirates (U.A.E.).

[3]In some portions of the record, Daridia's last name is given as "Daridia," while in other portions it is given as "Daredia." We will refer to him by the last name contained in our case style—"Daridia."

[4]The term "AED" is the currency abbreviation for the dirham, a unit of currency used in the U.A.E.

Prac. & Rem. Code Ann. § 36A.001 et seq.  CSHK later filed a motion for summary judgment on its request for recognition of the Dubai Judgment, while Appellees filed a motion for nonrecognition of the Dubai Judgment.  After conducting a hearing on the respective motions, the trial court signed an order denying CSHK's petition for recognition and granting Appellees' motion for nonrecognition.

In one issue on appeal—which can be divided into two subissues, the latter of which can be divided into four parts—CSHK argues that the trial court erred by holding that Appellees carried their burden under the Act to show that (1) Dubai's judicial system as a whole does not comply with basic due-process requirements, and (2) the specific Dubai proceedings (a) raised substantial doubt about the integrity of the court rendering the Dubai Judgment, (b) were not compatible with the requirements of due process, (c) provided inadequate notice to Appellees, and (d) conflicted with the public policy of Texas and the United States.  We will hold that the specific Dubai proceedings raised substantial doubt about the integrity of the court rendering the Dubai Judgment, were not compatible with the requirements of due process, and provided inadequate notice to Appellees.  Because of that holding, we need not address the trial court's ruling that the specific Dubai proceedings conflicted with the public policy of Texas and the United States, nor need we address the trial court's ruling that Dubai's judicial system as a whole does not comply with basic due-process requirements.  *See* Tex. R. App. P. 47.1.  Accordingly, we will affirm

the trial court's order denying CSHK's petition for recognition and granting Appellees' motion for nonrecognition.

## II. BACKGROUND

### A. CSHK's Contract with Trident and CSHK's Arbitration Awards Against Trident

CSHK is a Dubai-based construction company. Trident—an entity that is not a party to this proceeding—is a limited liability company formed in the U.A.E. that ceased operations in 2011. Appellees were each founders, partners, and shareholders of Trident.

In or around 2008, CSHK contracted with Trident to construct the Trident Grand—a residential tower in Dubai. Appellees did not contract with CSHK in their personal capacities, nor did they personally guarantee Trident's performance under the contract.

Around 2010 and 2011, CSHK initiated two arbitration proceedings against Trident for nonpayment under the contract. Amidst those arbitration proceedings, Trident ceased operations, and Appellees left Dubai. CSHK ultimately received arbitration awards in both of the arbitration proceedings. In one of the arbitration proceedings, CSHK was awarded AED 25,038,499.52. In the other arbitration proceeding, CSHK was awarded AED 163,707,943.77.

4

**B. CSHK's Attempts to Enforce the Arbitration Awards and the 2009 Ernst & Young Auditor's Report of Trident's Finances**

Following the entry of the arbitration awards, CSHK began execution proceedings in an attempt to enforce the awards. Those attempts were largely unsuccessful: in one of the arbitration proceedings, only AED 761,572.92 was paid in satisfaction of the award; in the other proceeding, only AED 5,096,872 was paid toward the award. Thus, of the combined AED 188,746,443.29 awarded in the two arbitration proceedings, CSHK only collected AED 5,858,444.92.[5]

While it was attempting to collect on the arbitration awards, CSHK received a 2009 auditor's report of Trident's finances completed by Ernst & Young. According to CSHK, the Ernst & Young report "raised red flags" with respect to Trident's finances. Among other things, CSHK points out that the report reflected that Trident's cash and bank balance declined from AED 148,753,285 in 2008 to AED 9,275,269 in 2009. CSHK also notes that the report reflected that Trident made

---

[5]As part of its attempts to enforce the arbitration awards, CSHK also placed liens on some of Trident's assets, including apartments in the Pentominium Tower. The Pentominium Tower was a planned 122-story residential skyscraper in Dubai that Trident had been developing. Construction on that project was halted, however, in 2011, with only twenty-two of the stories being completed. CSHK was not involved in the construction of that project. According to Appellees, the value of CSHK's liens on the Pentominium Tower exceeds the two arbitration awards. CSHK, however, maintains that its efforts to recover on the two arbitration awards through placing liens on the Pentominium Tower have not been successful.

certain purchases of property and registered those properties in the name of individuals[6] and that certain "incentives" were paid to Appellees.[7]

Unable to collect its arbitration awards against Trident and armed with the Ernst & Young report, CSHK turned its attention to Appellees and sought relief from the Dubai court system.

## C. An Overview of the Dubai Court System and the Important Role of Experts Within That System

Before addressing the Dubai court proceedings involving CSHK and Appellees, it is necessary to give some background information regarding the Dubai court system and the important role of experts within that system. Experts from both sides submitted declarations to aid the Texas trial court (and ultimately us) in understanding the Dubai court system. For CSHK, Naief Yahia, a lawyer practicing in Dubai who served as CSHK's counsel in the various Dubai proceedings, submitted multiple declarations.[8] For Appellees, Herbert S. Wolfson, a Pennsylvania attorney

---

[6]The identities of those individuals are unclear from the record.

[7]Appellees essentially suggest that the Ernst & Young report is a red herring. They point out that the Ernst & Young report came out well before the arbitration awards were entered in favor of CSHK. They also maintain that the Ernst & Young report did not allege that they had committed any fraud or misconduct. Indeed, the Ernst & Young report notes, "[T]o the best of our knowledge and belief, no violations of the Implementing Regulations . . . or of the articles of association of the Company have occurred during the year [of the audit period] which would have had a material effect on the business of the Company or on its financial position."

[8]Yahia stated that he has "been a practicing lawyer in Dubai since 2006." He said that he is "a Partner and Head of Litigation at Al Tamimi and Company's Dubai

6

whose law practice is primarily focused on the U.A.E., submitted multiple declarations.[9]

Yahia explained that the U.A.E. "operates under a civil law system, in which statutes and regulations are the main sources of law." He stated that "proceedings in the [U.A.E.] are based on written pleadings of the parties, which are supported with documentary written evidence." Yahia indicated that while the U.A.E. has a federal judiciary, Dubai has its own independent court system, which applies both the law of the U.A.E. and the law of Dubai.

Yahia described the multiple levels of courts within the Dubai court system. He explained that the first tier—the trial-court tier—consists of the Courts of First Instance (CFI). Yahia stated that litigants present their claims and defenses to judges in this tier, and the judges decide the case "based on the merits of the dispute, taking into consideration all aspects of the dispute and the evidence submitted in the matter." Yahia said that CFI judges "are entrusted with (i) a duty of determining the facts of [the] case (very often through the court-appointed experts, who prepare reports to assist the court), (ii) referring the case for investigation, (iii) hearing

office and [is] registered with the Government of Dubai Legal Affairs Department and Egyptian Lawyers Bar Association as a practicing lawyer."

[9]Wolfson stated that he has been practicing law since 1990. He indicated that since March 1992, his practice has "focused primarily on the [U.A.E.]." He averred that since that time, he has spent many years residing in Dubai and other parts of the U.A.E.

witnesses, [and] (iv) interrogating the parties, and then ruling on the law."[10] Yahia stated that the second tier consists of the Courts of Appeal. He explained that litigants utilize this tier when they are "not satisfied with the [CFI's] reasoning." Yahia indicated that litigants can appeal a decision of the Courts of Appeal to the third tier of the Dubai court system, the Court of Cassation.

Wolfson explained that the Dubai court system also includes the Center for Amicable Settlement of Disputes (CASD). He indicated that before a plaintiff can file a lawsuit in the CFI that requires expert evidence, the plaintiff must first file the matter with the CASD. Wolfson stated that while "the mandate of the CASD is—as suggested by its name—the amicable resolution of disputes, in practice the CASD normally entails adversarial proceedings similar to those used in other courts in Dubai."

Wolfson also explained the important and unique role of experts in the Dubai court system. He stated that while parties may agree on the selection of an expert, the "normal practice is for the court to choose the expert, without input from the litigants, by assigning the case to the next name in line on a list of experts maintained by the Dubai [c]ourts." Indeed, according to Wolfson, Dubai courts are "under no obligation to consider or give weight to the testimony of a party-appointed expert," and "in the absence of agreement by all litigants, a person or firm that is not registered

---

[10]In his declaration, Wolfson stated the CFI are divided into different sections, with different types of cases allocated to each section.

on the list of experts would not normally be permitted to provide expert testimony in a Dubai court." Notably, Wolfson explained that "courts in Dubai typically adopt the report of court-appointed experts without scrutiny, copy-pasting findings of fact and even legal conclusions into the court's judgment." Wolfson stated that under this system, "even if the court-appointed expert has no legal training, their report generally winds up being outcome-determinative not only as to questions of fact but often as to questions of law."

Wolfson noted that "[t]here is no doctrine of *stare decisis* or binding precedent in the [U.A.E.]." He explained that Dubai courts do not have juries; instead, cases are tried before either a single judge or a three-judge panel. Wolfson stated that "[u]nlike in the United States, a civil trial in the Dubai courts is not conducted within a single block of time." Instead, civil trials in Dubai are "conducted through a series of discontinuous hearings separated by gaps of several weeks or months."

Wolfson also explained the role of Islamic law—or *shari'a*—in the Dubai court system. He stated that "the Constitution of the [U.A.E.] states that Islamic law is a principal source of legislation in the [U.A.E.]." He noted that the civil code relied on by CSHK in the underlying Dubai proceedings "requires judges to apply *shari'a* principles in cases where there is no express provision in the statutory text." He cited a provision in that code requiring judges to "adjudicate according to the Islamic [*s*]*hari'a* taking into consideration the choice of the most appropriate solutions in the schools of Imam Malek and Imam Ahmad Ben Hanbal and, if not found there, then

9

in the schools of Imam El Shafe'i and Imam Abou Hanifa, as the interest so requires." He cited another provision in the civil code that provided that "[i]n understanding, interpreting[,] and construing the text [of a statute], the rules and fundamentals of Islamic doctrine shall be followed."[11]

## D. The 2019 Proceeding in the Dubai CASD—Without Appellees' Participation—and the Dubai CASD's Appointment of an Expert

In or around January 2019, CSHK filed a case in the Dubai CASD (the CASD Proceeding) against Trident, Appellees, and another individual, Rana Amer Saeed Mohammed Saeed.[12] In its petition, CSHK referenced its arbitration awards against Trident and its attempts to collect on those awards, and it alleged that it had been unsuccessful in collecting on the awards due to the "fraud, deception, and mismanagement" of Appellees and Saeed. Specifically, CSHK alleged that Appellees "had smuggled [Trident's] assets, engaged in fraud and deception, and committed several errors in the management and disposition of [Trident's] assets." According to CSHK, Appellees' actions cost CSHK the opportunity to recover Trident's assets. As purported evidence of the alleged fraud, CSHK pointed to the 2009 Ernst & Young report. CSHK requested that the Dubai CASD "[a]ppoint the accounting expert next on the roster" to be tasked with, among other things, reviewing the Ernst & Young

---

[11]Wolfson also stated that judges in Dubai "must be Muslim" and "must have a degree in law, or in *shari'a* and law."

[12]In its petition in the CASD Proceeding, CSHK alleged that Saeed worked with Appellees to manage Trident and other companies affiliated with Trident.

10

report, tracing Trident's assets and funds paid by Trident to others, and "determin[ing] and prov[ing] the gross management errors and the fraudulent and deceptive methods in which those in charge of managing [Trident] and the partners therein engaged to cause harm to the creditors."

In February 2019, CSHK attempted to serve the petition in the CASD Proceeding on Appellees by email. Later that month, CSHK attempted to serve Appellees by "hand service." Each of the three Appellees—Ali, Jamal, and Daridia— signed written declarations discussing, among other things, CSHK's attempts to serve them with process in the CASD Proceeding. In those declarations, Appellees each stated that they had never been served with any documents in the CASD Proceeding. Appellees each indicated that they had never used the email addresses through which CSHK had attempted to serve them with the CASD Proceeding. As to CSHK's attempt to serve them by "hand service" in 2019, Appellees each averred that they had left Dubai and the U.A.E. in 2011 and that they had not returned.

On March 4, 2019, the CASD appointed Dr. Redha Darwish Al Rahma to serve as an expert in the CASD Proceeding. On March 19, 2019, Al Rahma published an advertisement in the *Al Watan* Arabic newspaper summoning Trident, Appellees, and Saeed to attend a March 27, 2019 hearing in his office. Neither Trident, Appellees, nor Saeed attended the hearing. Instead, only CSHK's counsel and representatives attended the hearing at Al Rahma's office.

11

Over the ensuing months, Al Rahma reviewed the Ernst & Young report and contacted various entities that had had financial dealings with Trident. Moreover, on various days between March 2019 and July 2019, Al Rahma met with CSHK's counsel and was provided documents by CSHK's counsel. Appellees—who had not been served with the CASD Proceeding—were not present at those meetings. In July 2019, Al Rahma provided CSHK's counsel with an advance copy of his report for review and comment. Four days later, Al Rahma submitted his report to the Dubai CASD. Al Rahma later made a supplemental report. Al Rahma provided CSHK's counsel with an advance copy of the supplemental report on October 6, 2019, received comments from CSHK's counsel on October 8, 2019, and submitted a supplemental report to the Dubai CASD on October 9, 2019, that incorporated CSHK's comments.[13]

In his report, Al Rahma acknowledged that none of the named respondents in the case—including Appellees—had appeared in the CASD Proceeding, nor had any of them submitted any documents for his consideration. Nevertheless, Al Rahma stated that the respondents had been served by notice through publication in the *Al*

---

[13]On March 4, 2019, the Dubai CASD initially set Al Rahma's fee at AED 10,000 (approximately $2,700). On April 1, 2019, Al Rahma petitioned the Dubai CASD to increase his fee to AED 250,000 (approximately $68,500). On April 23, 2019, CSHK's counsel filed a notice with the Dubai CASD consenting to Al Rahma's request to increase his fee. On May 8, 2019, the Dubai CASD issued an order approving the increase of Al Rahma's fee from AED 10,000 to AED 250,000. CSHK's counsel then deposited the fee with the Dubai CASD.

*Watan* newspaper. In his report, Al Rahma made the following conclusion regarding Appellees' alleged fraud with respect to Trident's assets,

> The Expert has concluded that [Trident's] assets are currently nonexistent because of the actions of [Appellees and Saeed], as they are partners in [Trident] and responsible for the management thereof and all its actions, as they are responsible for what happened and the losses it suffered. It is evident to the Expert that they transferred [Trident's] assets to others and paid funds to others without consideration, or purchased assets in the names of others, and they failed to take steps to collect [Trident's] receivables. . . .
>
> As a result of [Trident's, Appellees', and Saeed's] actions, [CSHK] is unable to collect its receivables from [Trident], a total of AED 182,887,998.37.

## E. The 2020 Proceeding in the Dubai CFI

In February 2020, CSHK filed suit against Trident, Appellees, and Saeed in the Dubai CFI (the Initial CFI Proceeding). Appellees would later assert that they were not served with process in the Initial CFI Proceeding. As reflected in a later opinion by the Dubai Court of Appeals, Appellees argued that CSHK attempted to serve them in the Initial CFI Proceeding at an address unrelated to them, at email addresses unconnected to them, and through publication in a newspaper.[14] A few weeks after

---

[14]From the record, it appears that an attorney did appear, at least informally, in the Initial CFI Proceeding at some point on Appellees' behalf. From what we can glean, that attorney requested a continuance—which was denied—so that he could present the court with a power of attorney from Appellees and allow for full consular authentication of the power of attorney. As explained by Wolfson, "counsel seeking to enter an appearance on behalf of a client [in Dubai] must present the court with written evidence of counsel's authority to represent the client, in the form of a notarized power of attorney." He further noted, "A court in Dubai will accept a power of attorney notarized outside the [U.A.E.] only if the document undergoes full

13

filing the Initial CFI Proceeding, CSHK dropped Trident from the lawsuit, leaving only the claims against Appellees and Saeed.

In May 2020, the Dubai CFI signed a judgment in the Initial CFI Proceeding in CSHK's favor (the 2020 Judgment).[15] Through the 2020 Judgment, the Dubai CFI (1) confirmed that CSHK had abandoned its claim against Trident; (2) rejected CSHK's claim with respect to Saeed; and (3) directed Appellees to jointly pay CSHK the sum of AED 182,887,998.37, with nine percent statutory interest from the date of judgment until the judgment was paid in full. According to Wolfson, the 2020 Judgment "quot[ed] nearly verbatim from the report submitted by Dr. Al Rahma" in the CASD Proceeding.[16]

Appellees appealed the 2020 Judgment to the Dubai Court of Appeals.[17] Among other things, Appellees argued that the 2020 Judgment should be overturned

---

consular authentication, a process which (for a document signed and notarized in Texas) would entail obtaining stamps and seals" from various governmental offices in Texas, the United States, and the U.A.E.

[15]For clarity, we note that the 2020 Judgment is distinct from the Dubai Judgment. As we will explain, the 2020 Judgment was ultimately reversed by a Dubai court, remanded back to a Dubai CFI, and CSHK later obtained the Dubai Judgment. The judgment at issue in this appeal—i.e., the judgment that CSHK asked the trial court to recognize and that Appellees asked the trial court not to recognize—is the Dubai Judgment.

[16]The 2020 Judgment does not appear in the appellate record.

[17]Appellees filed two separate appeals of the 2020 Judgment. Those appeals were consolidated by the Dubai Court of Appeals. The Dubai Court of Appeals handed down one judgment with respect to the consolidated appeals, noting that the

because the procedures used to serve them with the statement of claim in the Initial CFI Proceeding were invalid and that, therefore, the 2020 Judgment was invalid. Appellees requested that the Dubai Court of Appeals "find the appealed judgment invalid because the litigation was not commenced, due to the invalid process of service with respect to [them], to remand the case to the [CFI] to rule again, to find the judgment invalid because it is based on an invalid report, and to reject the claim against [them]." Alternatively, Appellees requested that the Dubai Court of Appeals "appoint a committee of experts from the Expertise and Dispute Settlement Department at the Emirate of Dubai Ruler's Court to examine the elements of the claim."

The Dubai Court of Appeals ultimately ruled in Appellees' favor, holding that the service of process attempted on them during the Initial CFI Proceeding "was invalid, and consequently, the litigation was not commenced." In making that holding, the Dubai Court of Appeals noted that "service by means of publication in newspapers is an exceptional method not to be used unless all necessary means of inquiring into the person to be served have been exhausted." The court stated that Appellees had been "served the statement of claim by means of publication in the newspaper Al Fajr before the inquiry into each one's domicile and place of residence

---

"two appeals were filed with the same subject matter and grounds, and the same plea by [Appellees] concerning the invalidity of the service to them of the statement of claim." Thus, when discussing these appeals, we will treat them as one.

was exhausted." The Dubai Court of Appeals ultimately found that "the appealed judgment [was] invalid due to the invalid service of the statement of claim," and it remanded the case to the Dubai CFI. CSHK appealed the Dubai Court of Appeals' ruling to the Dubai Court of Cassation, but the Dubai Court of Cassation declined to take the case.

## F. The 2021 Proceeding in the Dubai CFI on Remand

On remand to the Dubai CFI (the CFI Proceeding on Remand), CSHK's claim proceeded before a different panel of judges than the panel who heard the Initial CFI Proceeding. According to Appellees, they were severely limited in their ability to make arguments to the Dubai CFI during the CFI Proceeding on Remand. To that end, in their respective declarations, Appellees maintained that they "were never permitted to submit a controverting expert report or assert defenses." They further stated that they "were never permitted to litigate the merits of the claims asserted against [them]" and that they had "never been afforded the opportunity to interact" with Al Rahma. Indeed, Appellees maintained that they had retained an expert to controvert Al Rahma's findings, but they stated that their expert "was not allowed to submit his report to the court for consideration."

Ultimately, the Dubai CFI rendered the Dubai Judgment during the CFI Proceeding on Remand. Through the Dubai Judgment, the Dubai CFI ruled that

16

Appellees were to jointly pay CSHK the sum of AED 182,887,998.37,[18] with five percent interest from the date of judgment until the judgment was paid in full.[19]  In the Dubai Judgment, the Dubai CFI recited the procedural history of the case, mentioning Al Rahma's report and stating that Al Rahma "has proved a lot of financial violations, [Appellees'] smuggling of the funds of [Trident] which proves the cheating and default of the [Appellees], their mismanagement of [Trident], that they have caused the waste of its funds and their taking these funds to themselves without any right."  The Dubai CFI stated in the Dubai Judgment that it "is assured of and adopts [Al Rahma's report], based on its reasons and considers [the report] as a basis for its judgment."

---

[18]The Dubai Judgment states a numerical value for the amount awarded immediately followed by a parenthetical giving a written-out statement regarding the amount awarded.  There is a fifty-dirham difference in those values.  To that end, the Dubai Judgment states that Appellees are to jointly pay CSHK the "amount of AED 182[,]887[,]948.37 (one hundred and eighty-two million eight hundred and eighty-seven thousand nine hundred and ninety-eight dirhams and thirty-seven fils)."  The parties do not mention this discrepancy in their briefing.

[19]In their brief, Appellees argue that the Dubai Judgment "recognized that CSHK had collected AED 5,858,444.92 in its collection proceedings against Trident but did not offset these amounts, nor did it take account of CSHK's existing liens on Trident's assets, but instead required Appellees to 'jointly pay' CSHK AED 182,887,948.37."  CSHK counters that the Dubai Judgment "shows on its face that the [Dubai CFI] offset the money CSHK recovered [during its 2013 collection efforts]; it awarded only the money CSHK was due."  The record supports CSHK's assertion:  the arbitration awards totaled a combined AED 188,746,443.29 and CSHK collected AED 5,858,444.92, leaving a balance of AED 182,887,998.37—the amount awarded in the Dubai Judgment.

17

Appellees appealed the Dubai Judgment to the Dubai Court of Appeals, arguing, among other things, that CSHK's claims against them were barred by the applicable statute of limitations governing tort claims. The Dubai Court of Appeals ruled in Appellees' favor, dismissing CSHK's claims. CSHK then appealed to the Dubai Court of Cassation, which held that CSHK's claims were not barred by the statute of limitations because limitations had been tolled when CSHK filed the CASD Proceeding in 2019. The Dubai Court of Cassation remanded the case to the Dubai Court of Appeals for further proceedings. On remand, the Dubai Court of Appeals affirmed the Dubai Judgment. Appellees appealed that ruling to the Dubai Court of Cassation, but the Dubai Court of Cassation rejected the appeal.

## G. The 2023 Proceeding in the Texas Trial Court

In July 2023, CSHK filed its original petition in the Texas trial court seeking recognition of the Dubai Judgment under the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a). Appellees answered, asserting, among other things, certain of the Act's nonrecognition grounds. *See id.* § 36A.004(b), (c). CSHK later sought summary judgment on its petition. Appellees then filed a motion for nonrecognition of the Dubai Judgment.

In their motion for nonrecognition, Appellees raised eleven different grounds for nonrecognition, the first three being mandatory grounds for nonrecognition, and the last eight being discretionary grounds for nonrecognition: that (1) the Dubai Judgment was rendered under a judicial system that does not provide impartial

18

tribunals or procedures compatible with the requirements of due process; (2) in rendering the Dubai Judgment, the foreign court did not have personal jurisdiction over Appellees; (3) the foreign court did not have subject matter jurisdiction; (4) Appellees did not receive notice of the foreign proceeding in sufficient time to enable them to defend themselves; (5) the Dubai Judgment was obtained by fraud that deprived Appellees of an adequate opportunity to present their case; (6) the Dubai Judgment or the causes of action on which the Dubai Judgment is based are repugnant to the public policy of Texas or the United States; (7) the Dubai court proceedings conflict with the 2012 and 2013 arbitration awards; (8) jurisdiction was based only on personal service and the foreign court was a seriously inconvenient forum for the trial of the action; (9) the Dubai Judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the Dubai Judgment; (10) the proceedings in the foreign court leading to the Dubai Judgment were not compatible with the requirements of due process; and (11) the U.A.E. has not recognized a Texas judgment. *See id.*

Appellees filed a response to CSHK's motion for summary judgment. Appellees also filed many objections to CSHK's summary-judgment evidence. CSHK filed a response to Appellees' motion for nonrecognition. CSHK also filed many objections to Appellees' evidence in support of their motion for nonrecognition. Appellees, in turn, filed objections to CSHK's evidence opposing Appellees' motion for nonrecognition.

In March 2024, the trial court conducted a hearing on CSHK's motion for summary judgment and Appellees' motion for nonrecognition. Both sides appeared and made arguments regarding their respective positions on the recognition of the Dubai Judgment.[20] During the hearing, the trial court raised an issue regarding the translation of the Dubai Judgment, and CSHK's attorney asked whether he could make a "supplemental filing to clarify that." The trial court responded, "Okay. I think that's maybe appropriate." CSHK's counsel later stated that he would "reattach" the judgment so that there was no ambiguity with the Dubai Judgment. The trial court responded, "Okay, all right."

The same day that the trial court conducted its hearing, it signed orders[21] ruling on the parties' various objections to the summary-judgment evidence and to the

---

[20]At the hearing, the trial judge noted that he was an "alum of Ernst & Young." The trial judge stated that he thought that the Ernst & Young report had taken "an oversized role in this case and in the judicial process in Dubai." The judge stated, "When I read that Ernst & Young report, I see a typical annual financial statement audited of a corporation with a qualified opinion, not an adverse opinion." He continued, "I don't see anywhere in that report where Ernst & Young said Trident, as a result of our audit, . . . transacted business by dispersing funds for which they received no consideration. I don't find that anywhere in the report."

[21]Through its orders, the trial court excluded much of the summary-judgment evidence submitted by the parties and the evidence they offered in support of and in opposition to Appellees' motion for nonrecognition. On appeal, CSHK does not challenge the trial court's orders excluding that evidence. Therefore, we do not consider the excluded evidence. *See Kuzmin v. Schiller*, No. 05-13-01394-CV, 2015 WL 150206, at *5 (Tex. App.—Dallas Jan. 8, 2015, no pet.) (mem. op.) ("Where the trial court sustains objections to summary[-]judgment evidence and [the] appellant does not challenge the evidentiary ruling on appeal, [the] appellant has waived error regarding that ruling and we may not consider the excluded evidence.").

evidence in support of and in opposition to Appellees' motion for nonrecognition.[22]

Seven days after the hearing, CSHK filed a "Notice of Corrected Translation" of the

Dubai Judgment (the Corrected Translation).[23]

---

[22]At oral argument, leave was granted to both parties "to submit a supplemental filing that reflects the specific evidence that was considered by the trial court at its March 28, 2024[] hearing after the trial court sustained numerous objections to [CSHK's] summary-judgment evidence and to Appellees' evidence in support of its motion for non[]recognition." Thereafter, the parties submitted a "Joint Filing of Redacted Trial-Court Evidence."

[23]Appellees submitted a brief to the trial court following the hearing in which they complained that the Corrected Translation was untimely. In their brief to our court, Appellees carry that argument further, contending that CSHK's petition for recognition should be rejected because the Corrected Translation was filed after the hearing and that CSHK did not seek leave from the trial court to file the Corrected Translation. Appellees also contend that "nothing in the trial court's Final Order suggests [that] the trial court considered the Corrected Translation." According to Appellees, this "leaves CSHK without a judgment to enforce and no way for the [Texas trial court] to render judgment in its favor." *See* Tex. Civ. Prac. & Rem. Code Ann. § 36A.003(a)(2) (stating that the Act applies to a foreign-country judgment to the extent that the judgment is "final, conclusive, and enforceable" under the law of the foreign country in which the judgment is rendered). We disagree. "A trial court has the discretion to permit late filings of opposing proof any time before the signing of [a] summary judgment," and "[p]ermission to file a late response may be reflected in a 'separate order,' a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Ferguson v. Tex. Dep't of Transp.*, No. 11-15-00110-CV, 2017 WL 3923510, at *8 (Tex. App.—Eastland Aug. 31, 2017, no pet.) (mem. op.). Here, at the hearing, the trial court raised an issue regarding the translation of the Dubai Judgment, CSHK's attorney asked whether he could make a "supplemental filing to clarify that" and stated that he would "reattach" the judgment, and the trial court indicated that doing so was permissible. Moreover, the trial court's order stated that it had considered, among other things, the "responses, admissible evidence, [and] briefing." Thus, the record indicates that the trial court permitted the Corrected Translation. *See Stephens v. LNV Corp.*, 488 S.W.3d 366, 375 (Tex. App.— El Paso 2015, no pet.) (holding that the trial court did not abuse its discretion by granting leave and considering a late-filed affidavit as part of the summary-judgment record).

The trial court ultimately signed an order denying CSHK's petition for recognition and granting Appellees' motion for nonrecognition. In its order, the trial court found that Appellees had met their burden of establishing that the Dubai Judgment was "rendered under a judicial system that does not provide procedures compatible with the requirements of due process of law." The trial court also found that Appellees had met their burden of establishing that: (1) the specific proceedings in the foreign court leading to the Dubai Judgment were not compatible with the requirements of due process, (2) the Dubai Judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the Dubai Judgment, (3) Appellees did not receive notice of the Dubai proceeding in sufficient time to enable them to defend against it, and (4) the Dubai Judgment is repugnant to the public policy of Texas and the United States. CSHK appeals from that final order.

## III. DISCUSSION

In its sole issue, CSHK argues that the trial court erred by denying its petition for recognition and granting Appellees' motion for nonrecognition. More specifically, CSHK argues that the trial court erred by holding that Appellees carried their burden under the Act to show that (1) Dubai's judicial system as a whole does not comply with basic due-process requirements, and (2) the specific Dubai proceedings (a) raised substantial doubt about the integrity of the court rendering the Dubai Judgment, (b) were not compatible with the requirements of due process, (c) provided

inadequate notice to Appellees, and (d) conflicted with the public policy of Texas and the United States.

**A. The Act**

The Act applies to a foreign-country judgment that grants a recovery of a sum of money and that, under the law of the foreign country in which the judgment is rendered, is final, conclusive, and enforceable. Tex. Civ. Prac. & Rem. Code Ann. § 36A.003(a). A party seeking recognition of a foreign-country judgment has the burden of establishing that the Act applies. *Id.* § 36A.003(c). When recognition is uncontested or a contest is overruled, a foreign-country judgment is conclusive between the parties to the extent that it grants recovery or denial of a sum of money. *Nicholas v. Env't Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Indeed, it is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit. *Diamond Offshore (Berm.), Ltd. v. Haaksman*, 355 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Unless the judgment debtor satisfies its burden of proof by establishing one or more of the specific grounds for nonrecognition set forth in Subsections 36A.004(b) and (c) of the Act, "a court of this state shall recognize" the foreign-country judgment. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(a); *see id.* § 36A.004(b), (c).

Subsection 36A.004(b) of the Act establishes three mandatory grounds for nonrecognition of a foreign-country judgment, while Subsection 36A.004(c) establishes nine discretionary grounds for nonrecognition. *See id.*; *see also Lancaster v.*

23

*WestCorp Sols., Ltd.*, 673 S.W.3d 57, 62–63 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (discussing "mandatory" and "discretionary" grounds for nonrecognition). The party seeking to avoid recognition has the burden of proving a ground for nonrecognition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(d); *Lancaster*, 673 S.W.3d at 62.

As to the three mandatory grounds for nonrecognition, a Texas court may not recognize a foreign-country judgment if one of the following circumstances are met: (1) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process, (2) the foreign court did not have personal jurisdiction over the defendant, or (3) the foreign court did not have subject matter jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(b).

As to the nine discretionary grounds for nonrecognition, a Texas court is not required to recognize a foreign-country judgment if one of the following circumstances are met: (1) the defendant in the foreign-court proceeding did not receive notice of the proceeding in sufficient time to enable the defendant to defend itself; (2) the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case; (3) the judgment or the cause of action on which the judgment is based is repugnant to the public policy of Texas or the United States; (4) the judgment conflicts with another final and conclusive judgment; (5) the foreign-court proceeding was contrary to an agreement between the parties under

which the dispute in question was to be determined otherwise than by proceedings in the foreign court; (6) jurisdiction was based only on personal service and the foreign court was a seriously inconvenient forum for the trial of the action; (7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; (8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process; or (9) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in Texas that, but for the fact that they are rendered in Texas, would constitute foreign-country judgments to which this chapter would apply under Section 36A.003. *Id.* § 36A.004(c); *see id.* § 36A.003.

## B. Standard of Review

Courts have applied varying standards of review with respect to the recognition or nonrecognition of a foreign-country judgment. *See Mariles v. Hector*, No. 05-16-00814-CV, 2018 WL 3723104, at *6 (Tex. App.—Dallas Aug. 6, 2018, no pet.) (mem. op.) (acknowledging discrepancy in standards of review under the Act but declining to adopt either de novo standard or abuse of discretion standard because trial court's order could be affirmed under either standard); *see also Lancaster*, 673 S.W.3d at 62 (discussing varying standards of review used by courts in reviewing a foreign-country judgment under the Act).

On the one hand, the Austin and both Houston courts of appeals have applied a de novo standard of review when addressing issues of recognition of a foreign-

country judgment under the Act. *See Wooten v. Kreissparkasse Boeblingen*, No. 14-23-00716-CV, 2024 WL 4361635, at *1 (Tex. App.—Houston [14th Dist.] Oct. 1, 2024, no pet.) (mem. op.); *Nicholas*, 499 S.W.3d at 896; *Diamond Offshore (Berm.), Ltd.*, 355 S.W.3d at 845, 848; *Sanchez v. Palau*, 317 S.W.3d 780, 785 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Naves v. Nat'l W. Life Ins. Co.*, No. 03-08-00525-CV, 2009 WL 2900755, at *2 (Tex. App.—Austin Sept. 10, 2009, pet. denied) (mem. op.); *see also Tucker v. Campos*, No. 03-20-00515-CV, 2021 WL 3572678, at *3 n.2 (Tex. App.—Austin Aug. 13, 2021, no pet.) (mem. op.).

On the other hand, the Corpus Christi–Edinburg Court of Appeals has offered a more nuanced standard of review. *See Lancaster*, 673 S.W.3d at 63. After discussing the approaches of various courts to the issue, the court stated that "whether a foreign-country judgment falls under the Act or the mandatory nonrecognition grounds is first a question of law, which we review de novo." *Id.* (citing *Nicholas*, 499 S.W.3d at 896). The court then stated, "But whether a trial court erred by recognizing or refusing to recognize the foreign-country judgment under one of the permissive grounds should be reviewed for an abuse of discretion." *Id.* (first citing *Don Docksteader Motors, Ltd. v. Patal Enters., Ltd.*, 776 S.W.2d 726, 727 (Tex. App.—Corpus Christi 1989), *rev'd on other grounds*, 794 S.W.2d 760 (Tex. 1990); and then citing *Eggert v. State Bar of Tex.*, 606 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2020, no pet.)).

The Fifth Circuit has offered yet another approach. *See DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 379 (5th Cir. 2015). It has stated that whether one

26

of the mandatory nonrecognition grounds applies is a question of law that is reviewed de novo. *Id.* It further stated that the determination of whether one of the discretionary grounds for nonrecognition applies is first reviewed de novo; then, if the court finds that one of the discretionary grounds for nonrecognition applies, the decision to recognize the judgment is reviewed for an abuse of discretion. *Id.* at 379 n.3.

We need not determine which of these standards of review is correct because we will ultimately find that—regardless of whether we review the trial court's order de novo or for an abuse of discretion—the trial court did not err or abuse its discretion with respect to its ruling that the specific Dubai proceedings raised doubt about the integrity of the court rendering the Dubai Judgment, were not compatible with the requirements of due process, and provided inadequate notice to Appellees. *See Mariles*, 2018 WL 3723104, at \*6 ("We need not determine which standard is applicable, however, because the outcome is the same under either standard."); *see also Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 332 n.23 (5th Cir. 2002) (noting that "little turns . . . on whether we label review of this particular question abuse of discretion or de novo" (internal quotation omitted)).

## C. Analysis

Because the Dubai Judgment granted a recovery of a sum of money and was a final, conclusive, and enforceable judgment under Dubai law, CSHK has established

27

that the Act applies.[24]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 36A.003(a).  We thus turn to whether Appellees have established one or more of the grounds for nonrecognition under the Act.  *See id.* § 36A.004(b), (c).  We begin our analysis of that issue by addressing the specific Dubai proceedings and whether they raised doubt about the integrity of the court rendering the Dubai Judgment, were not compatible with the requirements of due process, and provided inadequate notice to Appellees.  Because there is significant overlap regarding these three grounds for nonrecognition and the facts relevant to them, we group our analysis regarding them.

1.  **Applicable Law**

    a.  **General Precepts Regarding Notice, Due Process, and Fairness From Courts**

A lack of notice violates basic principles of due process.  *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S. Ct. 896, 899 (1988)).  Indeed, "a judgment entered without notice or service is constitutionally infirm."  *Peralta*, 485 U.S. at 84, 108 S. Ct. at 899; *see In re Guardianship of Jordan*, 348 S.W.3d 401, 406 (Tex. App.—Beaumont 2011, no pet.) ("The constitutional right to due process of law restricts the ability of a court to render a judgment binding a party without proper notice.").

---

[24]Apart from Appellees' argument that the Corrected Translation was untimely, *see supra* note 23, no party suggests that the Act does not apply.

Moreover, due process requires that a party be afforded "an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)). As noted in a comment to the Restatement (Fourth) of Foreign Relations Law,

> A court may have a sufficient basis to exercise personal jurisdiction over a party, based on that party's contacts with the forum, but still fail to give adequate notice of the existence of the proceeding. In the United States, such notice normally comes in the form of service of process. When a foreign court's failure to give adequate notice prejudices a party by denying that party enough time to prepare its defense, a court in the United States will refuse to recognize the resulting judgment. A court assesses the adequacy of the notice based on a general standard of reasonableness. The question does not turn on technical compliance with foreign rules governing service of process.

Restatement (Fourth) of Foreign Relations Law § 484 cmt. c (2018).

While the "[r]ecognition of a foreign-country judgment does not require the foreign court to 'comply with the traditional rigors of American due process,'" the "opportunity to present one's case is no minor twist or turn of modern due process jurisprudence." *DeJoria*, 935 F.3d at 395 (quoting *Soc'y of Lloyd's*, 303 F.3d at 330). Indeed, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 395–96 (quoting *Mathews*, 424 U.S. at 333, 96 S. Ct. at 902). As noted in a comment to the Restatement (Fourth) of Foreign Relations Law,

> Courts in the United States will not recognize a foreign judgment if the specific proceeding was not compatible with fundamental principles of

fairness. The standard for fundamental fairness is the same for this ground as for § 483(a), but the focus is on the specific proceeding that produced the judgment rather than on the foreign judicial system as a whole. A pattern of ex parte contacts between the court and one side to the dispute or similar one-sided interventions might demonstrate a lack of fundamental fairness. Foreign law also may impair particular proceedings without infecting the entire legal system. The selective use of conclusive presumptions, for example, if enacted to affect the outcome of a particular proceeding or set of cases, might produce a denial of fundamental principles of fairness even in situations in which a court faithfully and disinterestedly applies the law.

Restatement (Fourth) of Foreign Relations Law § 484 cmt. j.

### b. The *Wehbe* Case

Appellees point us to *Wehbe v. Cont'l Ins. Co.*, No. 111140/94, 1995 WL 619936 (N.Y. Sup. Ct. Oct. 11, 1995), in support of their argument that the trial court did not err in granting their motion for nonrecognition. We have looked for cases involving facts resembling those here, and we find *Wehbe* to be the most similar.

In *Wehbe*, Continental Insurance had a contract with a non-party—NEA—to do business in Continental's name in the Middle East. *Id.* at *1. Wehbe was the manager and owner of NEA, and he operated out of an office in Dubai. *Id.* Continental later terminated its relationship with NEA, and a dispute arose between Continental and NEA/Wehbe regarding payments under the contract and deposits made by Continental. *Id.* During the course of that dispute, Continental offered Wehbe $1,000,000 to settle the dispute, and Wehbe ostensibly agreed. *Id.* When that purported settlement never came to fruition, Wehbe filed suit against Continental in Dubai, serving it at its last known address in Dubai—the "now closed office managed

30

by Wehbe himself." *Id.* Wehbe also published notice of the suit in a local newspaper. *Id.* When Continental did not answer the suit, Wehbe obtained a default judgment from the Dubai CFI for approximately $1,000,000. *Id.*

Continental later learned of the default judgment, appeared in the action, and had the default judgment vacated. *Id.* at *2. Continental then had Wehbe's case dismissed on the grounds that he did not satisfy the conditions of the settlement agreement. *Id.* Wehbe appealed, and the Dubai Court of Appeals reinstated the default judgment. *Id.* Continental appealed to the Dubai Court of Cassation, and that court reversed and remanded Wehbe's claim back to the Dubai Court of Appeals. *Id.* On remand, the Dubai Court of Appeals ultimately found in Wehbe's favor. *Id.*

Wehbe later petitioned a New York court to recognize the judgment rendered in Dubai, while Continental argued that the judgment should not be recognized. *See id.* at *2–3. In the New York proceeding, Continental argued that the New York court should not recognize the foreign judgment, arguing, among other things, that "foreign litigants are not afforded due process in Dubai" and that it was "not afforded due process by the courts of Dubai" in the underlying case. *Id.* at *3. Continental also argued that "it was not given notice of the Dubai proceeding and thus did not have a full and fair opportunity to litigate the action." *Id.* at *4.

In analyzing those arguments, the New York court held that "Continental did not receive notice of the proceedings in sufficient time to defend itself." *Id.* at *5. The court noted, "Although Continental later appeared and ostensibly contested the

31

judgment on the merits, even a cursory reading of the various decisions of the Dubai [c]ourt[s] reveal that the initial default judgment carried great weight and influenced the later decisions of the Dubai courts." *Id.* Accordingly, the court held that "Continental was deprived of an adequate opportunity to defend itself." *Id.* In making that holding, the New York court recognized that "[f]air notice and adequate time to defend goes to the roots of due process and our legal system's sense of fairness." *Id.* And because the court held that Continental did not have fair notice to defend itself in the underlying Dubai proceeding, it then declined to reach the issue of whether the Dubai courts generally operate under a system that does not provide impartial tribunals or is not compatible with due-process requirements. *Id.*

### 2. Application of the Law to the Facts

Here, the CASD Proceeding and the appointment of Al Rahma as an expert in that proceeding was a critical moment in the various Dubai proceedings. To that end, according to Wolfson, "courts in Dubai typically adopt the report of court-appointed experts without scrutiny, copy-pasting findings of fact and even legal conclusions into the court's judgment." And "even if the court-appointed expert has no legal training, their report generally winds up being outcome-determinative not only as to questions of fact but often as to questions of law." Moreover, Dubai courts are "under no obligation to consider or give weight to the testimony of a party-appointed expert," and "in the absence of agreement by all litigants, a person or firm that is not registered

32

on the list of experts would not normally be permitted to provide expert testimony in a Dubai court."

And while a critical moment occurred during the CASD Proceeding—the appointment of Al Rahma as an expert—Appellees were not served with process in that proceeding. *See Univ. of Tex. Med. Sch. at Hous.*, 901 S.W.2d at 930 (stating that due process requires that a party be afforded "an opportunity to be heard at a meaningful time and in a meaningful manner"). During the CASD Proceeding, Al Rahma repeatedly met with CSHK's counsel and representatives but did not meet with Appellees. Al Rahma then made an expert report and a supplemental expert report, giving CSHK's counsel advanced copies of the report for review. *Cf.* Restatement (Fourth) of Foreign Relations Law § 484 cmt. j ("A pattern of ex parte contacts between the court and one side to the dispute or similar one-sided interventions might demonstrate a lack of fundamental fairness."). In his report, Al Rahma concluded that Appellees were responsible for the decline in Trident's assets and CSHK's inability to collect its two arbitration awards.

With Al Rahmas's report in hand, CSHK filed suit in the Dubai CFI and ultimately obtained the 2020 Judgment. While the 2020 Judgment was later reversed and the case remanded back to the Dubai CFI—because the service of process attempted on Appellees during that proceeding was invalid—the die was already cast. To that end, according to their respective declarations, Appellees "were never permitted to submit a controverting expert report or assert defenses." They also

33

indicated that they "were never permitted to litigate the merits of the claims asserted against [them]" and that they had "never been afforded the opportunity to interact" with Al Rahma. *See Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). And while Appellees retained an expert to controvert Al Rahma's findings, they stated that their expert "was not allowed to submit his report to the court for consideration."

And there is no question that Al Rahma's report played a significant role in the Dubai Judgment. In that judgment, the Dubai CFI stated that it "is assured of and adopts [Al Rahma's report], based on its reasons and considers [the report] as a basis for its judgment." The Dubai CFI further noted that Al Rahma "has proved a lot of financial violations, [Appellees'] smuggling of the funds of [Trident] which proves the cheating and default of the [Appellees], their mismanagement of [Trident], that they have caused the waste of its funds and their taking these funds to themselves without any right." In his declaration, Wolfson averred that the Dubai Judgment contained statements that were "nearly word-for-word identical" to statements contained in the 2020 Judgment. Indeed, the Dubai Judgment made references to a "fourth" and "fifth" defendant/respondent. This is notable because there were only three defendants/respondents in that proceeding, while there were five defendants/respondents in the Initial CFI Proceeding that led to the 2020 Judgment.

*See Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 585 (E.D. Va. 2019) ("[A]s noted above, the decisions themselves contain troubling inconsistencies and conclusory findings that further raise red flags about their integrity.").

Just like in *Wehbe*, even a cursory reading of the Dubai Judgment and the evidence pertaining to the various Dubai proceedings reveals that Al Rahma's report carried great weight and influenced the later decisions of the Dubai courts. *See Wehbe*, 1995 WL 619936, at *5 ("Although Continental later appeared and ostensibly contested the judgment on the merits, even a cursory reading of the various decisions of the Dubai [c]ourt[s] reveal that the initial default judgment carried great weight and influenced the later decisions of the Dubai courts."). Appellees, however, were not given notice of the CASD Proceeding through which Al Rahma was appointed an expert, nor were they given an opportunity to interact with Al Rahma or permitted to submit a controverting expert report. Indeed, in the Dubai Judgment, the Dubai CFI commented on how it could accept Al Rahma's report without needing to address Appellees' objections to the report, without having to hear from Appellees' expert witness, and without having to reassign Al Rahma as the expert,

> It is established by the judiciary that "understanding the facts in the case and the interpretation of its evidence, including the expert report, lies within the competent court's authority[,"] without commenting by the Court of Cassation as long as the court establishes its judgment on justifiable grounds concluded from the papers and as long as the competent court decided to adopt the report of the delegated expert in the case, due to being convinced of the validity of its reasons, and considered that it examined all the points of dispute in the case. The court then shall not be obligated afterwards to reply with special reasons

35

to the objections made by the litigant to the expert's report, or to accept his request to delegate another expert or to reassign the same expert more than once. As long as the court found the original and supplementary expert sufficient to form its opinion for adjudication.

Based on those facts, we do not think that the trial court erred or abused its discretion by finding that the specific Dubai proceedings raised doubt about the integrity of the court rendering the Dubai Judgment, were not compatible with the requirements of due process, and provided inadequate notice to Appellees. *See Peralta*, 485 U.S. at 84, 108 S. Ct. at 899; *Wehbe*, 1995 WL 619936, at *5; *see also* Restatement (Fourth) of Foreign Relations Law § 484 cmts. c, j.

### 3. Two Arguments Made in CSHK's Reply Brief

In its reply brief, CSHK argues that Appellees should be judicially estopped from complaining about what occurred during the CFI Proceeding on Remand because Appellees themselves requested the remand to the Dubai CFI. Pointing to *Dart v. Balaam*, 953 S.W.2d 478, 480 (Tex. App.—Fort Worth 1997, no pet.), CSHK also argues that Appellees should be precluded from collaterally attacking the Dubai Judgment because Appellees could have raised the complaints they now make on appeal in the various Dubai proceedings. We will consider these arguments in turn.

#### a. Judicial Estoppel

In its reply brief, CSHK argues that Appellees should be judicially estopped from complaining about what occurred during the CFI Proceeding on Remand because Appellees themselves requested the remand to the Dubai CFI. *See Perryman v.*

36

*Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018) ("Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." (quotation omitted)). We note, however, that in the Initial CFI Proceeding, Appellees requested not only that the Dubai Court of Appeals remand the case to the Dubai CFI, but that alternatively, the Dubai Court of Appeals "appoint a committee of experts from the Expertise and Dispute Settlement Department at the Emirate of Dubai Ruler's Court to examine the elements of the claim." Under those circumstances—where Appellees not only asked for a remand but alternatively asked for the appointment of new experts—judicial estoppel does not bar them from making their complaint on appeal. *See In re Educ. Mgmt. Corp., Inc.*, 14 S.W.3d 418, 425 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) ("Because judicial estoppel does not apply to alternative positions taken in the same proceeding, it is inapplicable here.").

Moreover, the record does not reflect that Appellees took a position inconsistent to the one they are now taking. Rather, in the Dubai Court of Appeals' judgment in the Initial CFI Proceeding—the judgment that discussed Appellees' request for a remand to the Dubai CFI and their alternative request for the appointment of new experts—the Dubai Court of Appeals repeatedly mentioned Appellees' complaint regarding Al Rahma's report and their inability to speak with him. In this regard, the Dubai Court of Appeals mentioned that Appellees had submitted a brief in which they complained that "the first-instance judgment is invalid

37

because it is based on an invalid expert report . . . , as the expert did not call on [them] when retasked to prepare [his] supplementary report." And notably, when mentioning Appellees' request for a remand to the Dubai CFI, the Dubai Court of Appeals mentioned that Appellees had requested a "remand to the [CFI] to rule again, to find the judgment invalid because it is based on an invalid report, and to reject the claim against [them]." Thus, because Appellees' position on appeal is not inconsistent with the position they took in the various Dubai proceedings, we reject CSHK's argument that judicial estoppel should bar Appellees' argument on appeal. *See Estate of Phillips*, No. 09-21-00284-CV, 2023 WL 6156080, at *7 (Tex. App.—Beaumont Sept. 21, 2023, pet. denied) (mem. op.) (holding that party was not judicially estopped from making an argument on appeal when he did not make an argument contrary to that position in a prior proceeding); *Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 620 (Tex. App.—Austin 2010, no pet.) (similar).

### b. Collateral Attack

In its reply brief, CSHK cites *Dart* to support its argument that Appellees should be precluded from collaterally attacking the Dubai Judgment because Appellees could have raised the complaints they now make on appeal in the various Dubai proceedings.

In *Dart*, an appellee filed in the Texas trial court a request for recognition of an Australian judgment, and the appellant filed a motion for nonrecognition citing five different grounds, one of which was that the Australian judgment "was decided under

a system that did not provide procedures compatible with the requirements of due process." 953 S.W.2d at 479. The Texas trial court denied the appellant's motion for nonrecognition and recognized the Australian judgment. *Id.* On appeal, the appellant argued that the trial court erred by recognizing the Australian judgment because it was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process. *Id.* at 480. Specifically, the appellant's due-process complaint concerned the right to a jury trial. *Id.* The appellant complained that he "desired a trial by jury and the [Australian] limitation in this regard is not on par with one of . . . the most sacred right[s] afforded to the citizens of this State." *Id.*

In rejecting that argument, we began by noting that the Act "precludes a judgment debtor from collaterally attacking a foreign judgment where an issue was litigated before a foreign court or the party was given the opportunity to litigate the issue before that court." *Id.* at 480. We further stated that "[g]rounds for nonrecognition may be waived if a party had the right to assert that ground as an objection or defense in the foreign country court but failed to do so." *Id.* We noted that the applicable Australian rules of civil procedure allowed the appellant the right to request a trial by jury. *Id.* We stated that to exercise that right, the appellant needed to have filed a timely notice in the Australian court requesting a jury trial. *Id.* at 481. We noted, however, that the appellant "never requested a jury trial and, therefore, waived his right to have the requirement considered as a ground for

39

nonrecognition under the [Act]." *Id.* Thus, we overruled the appellant's complaint on appeal pertaining to the jury-trial issue. *Id.*

We find *Dart* distinguishable from the facts presented here. In *Dart*, the appellant had the opportunity to request a jury trial in the Australian court, yet he failed to do so. *Id.* Here, in contrast, Appellees each submitted declarations stating that they "were never permitted to submit a controverting expert report or assert defenses." They also stated that they "were never permitted to litigate the merits of the claims asserted against [them]" and that they had "never been afforded the opportunity to interact" with Al Rahma. Appellees further maintained that they had retained an expert to controvert Al Rahma's report, but they stated that their expert "was not allowed to submit his report to the court for consideration."

And, as we have already explained, Appellees' inability to interact with Al Rahma was detrimental to their defense in the various Dubai proceedings, particularly in light of the important role given to expert witnesses in the Dubai court system. As explained by Wolfson—the expert hired by Appellees in the Texas court proceeding to give background on the Dubai legal system—"courts in Dubai typically adopt the report of court-appointed experts without scrutiny, copy-pasting findings of fact and even legal conclusions into the court's judgment." Thus, "even if the court-appointed expert has no legal training, their report generally winds up being outcome-

determinative not only as to questions of fact but often as to questions of law."[25] We thus reject CSHK's argument that Appellees should be precluded from collaterally attacking the Dubai Judgment.

### 4. CSHK's Remaining Arguments

Because we have determined that the trial court did not err by denying CSHK's petition for recognition and granting Appellees' motion for nonrecognition on the grounds that the specific Dubai proceedings raised substantial doubt about the integrity of the court rendering the Dubai Judgment, were not compatible with the requirements of due process, and provided inadequate notice to Appellees, we need not consider CSHK's subissue relating to whether the trial court erred by finding that Dubai's judicial system as a whole does not comply with basic due-process requirements, nor need we consider CSHK's argument that the specific Dubai proceedings conflicted with the public policy of Texas and the United States. *See* Tex. R. App. P. 47.1; *Wehbe*, 1995 WL 619936, at *5 ("The court notes that it need not reach the issue of whether the Dubai courts generally operate under a system which

---

[25]In their reply brief, CSHK points to language contained in Wolfson's declaration in which he talked about a litigant's ability in Dubai to address specific points with an expert on remand or replace an expert in the event of misconduct. But CSHK objected to that paragraph, and the trial court sustained the objection. Because the trial court did not consider this evidence, neither can we. *Walker v. Schion*, 420 S.W.3d 454, 457 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Because the only evidence Walker cites in support of his defamation claim was struck by the trial court in an unchallenged evidentiary ruling, we cannot consider that evidence on appeal.").

41

does not provide impartial tribunals or procedures compatible with the requirements of due process of law and has not considered those issues."); *see also Burgan Express for Gen. Trading and Contracting Co. v. Atwood*, No. 2:12-cv-041, 2012 WL 4473210, at *8 (S.D. Ohio Sept. 26, 2012) ("In light of the evidence that the Defendants actually received due process, the Court need not address Defendants' unsupported argument that the Kuwaiti justice system 'systemically' fails to provide due process.").

We overrule CSHK's sole issue.

## IV. CONCLUSION

Having overruled CSHK's sole issue, we affirm the trial court's order denying CSHK's petition for recognition and granting Appellees' motion for nonrecognition.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 3, 2025